445 So.2d 94 (1984)
James C. STEELE, III et ux., Plaintiffs-Appellees,
v.
Eloise S. DENNING et al., Defendants-Appellants.
No. 15929-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Rehearing Denied February 23, 1984.
Writ Granted April 13, 1984.
*95 R. Wayne Smith, Ruston, for defendants-appellants, Eloise S. Denning et al.
Watson, Murchison, Crews, Arthur & Corkern by Daniel T. Murchison, Natchitoches, for defendant-appellant, Sherwood I. Burgdorf.
Boles & Mounger by Harvey P. Perry, Monroe, for plaintiffs-appellees, James C. Steele, III and Gloria Dyke Steele.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Plaintiffs, husband and wife, alleging ownership of undivided interests [less mineral rights reserved by a prior landowner] in two tracts comprising 160 acres, sued for a partition by licitation of land and minerals. Made defendants were Burgdorf, owner of the mineral servitude burdening plaintiffs' undivided interests, and other property co-ownerswhose undivided interests were not subject to mineral servitudes.
The property in question was subject to a mineral lease in favor of Getty Oil Company ("Getty") and was under production, with royalties being received by the mineral lessors. Getty, also made a defendant, answered and requested recognition and maintenance in force of its mineral lease. All other defendants filed exceptions of no right of action and no cause of action, asserting that plaintiffs could not provoke a partition of the mineral rights because, holding no mineral rights themselves, they were not co-owners with the defendants who had those rights to search for minerals. Therefore, the position of defendants *96 was that plaintiffs could have only the land surface partitioned.
After trial of the exceptions, in written reasons for ruling in favor of plaintiffs, the trial judge commented:
"The arguments of exceptors appear to be based upon the invalid conclusion that separate estates exist in land and minerals and upon the erroneous assumption that mineral interest ownership (as distinguished from mineral ownership) is of equal dignity to land ownership. As the law and jurisprudence clearly recognizes, mineral interest ownership is only a servitude imposed upon that land, not a separate estate."
The trial court concluded that there was "a co-ownership between the plaintiffs and all other co-owners of the land." (emphasis added). Defendant Burgdorf was classified, not as a mineral owner, but as the holder of a mineral servitude upon the undivided interests of plaintiffs. The trial judge reasoned that under the implied authority of La.R.S. 31:178[1] it was appropriate to include that mineral interest in the partition, whether the latter was in kind or by licitation.
However, with reference to the mineral lease held by Getty, the trial court noted:
"If a mineral interest is attributable to the entire property [conveyed by all co-owners], as appears to be the case with that of Getty Oil Company [in contrast to Burgdorf] the property would be partitioned subject to the interest of Getty Oil Company."
Subsequent to the overruling of defendants' exceptions, the case was tried on the merits. Judgment was rendered and signed ordering a partition by licitation of the 160 acres, and further ordering separate appraisals of the value of the interest in the mineral rights of each party and the value of the interest in the land of each party.
All defendants except Getty appealed, raising as the primary issue for our consideration the contention that the trial judge erred in overruling defendants' exceptions of no right of action and no cause of action.
According to the record, in 1978 Burgdorf, co-owner of an undivided interest in this 160 acres located in Lincoln Parish, sold that interest to Ahrens, but expressly reserved his entire interest in the mineral rights. In 1980 Ahrens sold his interest in the subject property to the Steeles, subject to the prior mineral servitude in favor of Burgdorf.
This partition suit was filed by the Steeles on November 4, 1980.
Our civil code provides that anyone may demand partition of a thing held in common. La.C.C. Article 1289. What constitutes a holding in common is generally the critical issue to resolve in determining the right to partition.
In the landmark case of Smith v. Nelson, 121 La. 170, 46 So. 200 (1908), our supreme court refused to allow the naked owners of an undivided one-half interest in property to force a partition against one who held the usufruct over plaintiffs' interest and perfect ownership of the remainder, commenting:
"The law which confers the right to the partition of a `thing held in common' has no application to those who hold, respectively, the fragments of a dismembered title to the same immovable property, for the reason that in such case, the title being dismembered, each part is a distinct thing, held by a different owner, and there is no `thing held in common.' It is clear therefore, that as between plaintiffs, as owner of an undivided interest in the naked title to the property in question, and defendant as usufructuary *97 (of such interest), there is no basis for this action."
Smith has been generally recognized as authority for the legal principle that a partition action is available only to parties who own property rights of the same nature as the persons against whom the partition is sought. Once the existence of requisite common elements has been established, the right to partition is absolute. Conversely, if common elements do not subsist, an action for partition will not lie. See Yiannopoulos, Louisiana Civil Law Treatise, Personal Servitudes, Vol. 3, Sect. 8 (1978); Prohibition of Partition by Licitation of Property Subject to Usufruct, 55 Tulane Law Review 113 (1980).
Recognition of this rule of law requiring the existence of "common elements" as a prerequisite for entitlement to provoke a partition of property is reflected in La.C.C. Article 541, which provides that a usufruct created in favor of several persons in indivision is subject to partition. Further, La. C.C. Article 542 expressly authorizes the partition of the naked ownership of property subject to a usufruct.
Where property is susceptible to partition in kind, a party with interests in both naked ownership and usufruct may reintegrate those elements and be declared full owner of a separate tract. La.C.C. Art. 543. However, the second sentence of that article specifically prohibits partition by licitation where one person is both an owner and a usufructuary. The official comment to this article declares that the cited sentence is based on prior Louisiana jurisprudence and effects no change in the law.
In Devillier v. Devillier, 371 So.2d 1230 (La.App. 3rd Cir.1979), the party suing for a partition by licitation owned an undivided interest in perfect ownership. Other defendants held naked ownerships burdened by the usufruct of an additional defendant. The court ruled that plaintiff was entitled to a partition by licitation since her perfect ownership interest gave her common elements with all the others who had an interest in the property.
Louisiana C.C. Article 476 provides:
One may have various rights in things:
(1) Ownership;
(2) Personal and predial servitudes; and
(3) Such other real rights as the law allows.
Our jurisprudence has recognized that parties to a contract may create real rights apart from those expressly stipulated in the civil code, as long as public policy is not violated. Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641 (1915). A significant example of a new form of real right created by parties in the exercise of their contractual freedom is the right to search for minerals. Article 3, Louisiana Mineral Code (La.R.S. 31:3).
The nature of mineral rights is not an issue in this case. It is undisputed that in Louisiana a sale or reservation of minerals creates a real right in the nature of a servitude. Frost Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922); Allied Chemical Corporation v. Dye, 441 So.2d 776 (La.App. 2d Cir.1983); La.R.S. 31:18, 21.
It is clear that the mineral servitude doctrine precludes creation of a mineral estate independent of full title to the land. La.R.S. 31:6.
Having summarized these accepted tenets relative to the nature of mineral rights, we proceed to point out that recognition of this established law is not dispositive of the primary question posed by this case: what elements of ownership in the 160 acres sought to be partitioned do plaintiffs hold in common with the defendants who have appealed the district court judgment?
Although the cases and codal articles discussed above deal with usufructs rather than with mineral servitudes, their underlying rationale is pertinent to a resolution of the prime issue confronting us. Consequently, reasoning by analogy from that jurisprudence and the relevant codal articles, we hold that at the time of the trial of the exceptions of no right of action and no cause of action:

*98 (1) Burgdorf held a mineral servitude [a real right] burdening plaintiffs' undivided interests in the 160 acres. Consequently, plaintiffs had an imperfect or dismembered ownershipi.e., did not have all the elements of ownership which accompany perfect ownership.
(2) Plaintiffs did not hold a common element with defendant Burgdorf, since he had the right to search for minerals but they did not. It follows logically that plaintiffs could not provoke a partition of Burgdorf's mineral servitude. The trial judge erred in so holding when he ruled on the exceptions.
(3) The common element held by plaintiffs with the other defendants [co-landowners] was ownership of an interest in the property, exclusive of the right to search for minerals. Therefore, with respect to these defendants, plaintiffs could only provoke a partition of that common element. The trial court also erred in its ruling on this point.
Patrick v. Johnstone, 361 So.2d 894 (La. App. 2d Cir.1978), relied upon by the trial judge and plaintiffs, is factually distinguishable. There, the plaintiff Patrick and the defendant Joe Johnstone owned property in indivision, with the undivided interest of the latter burdened by a mineral servitude held by W.W. Johnstone. We affirmed a judgment ordering partition by licitation of the land as well as the minerals. This is entirely consistent with our reasoning here. Patrick, having perfect ownership of an undivided interest, had a common element with his co-landowner and also with the holder of the mineral servitude. Rather than contradicting, Patrick supports our ruling in this case.
For these reasons, we reverse the district court judgment as to the defendant Burgdorf; sustain his exception of no cause of action; and render judgment dismissing the suit as to that defendant, at plaintiffs' cost.
With respect to the other defendants-appellants, the district court judgment is amended to provide that the property to be partitioned by licitation shall be that described in the judgment, LESS AND EXCEPT the minerals lying in, under and upon the tracts; with appraisal ordered only with respect to the property to be partitioned by licitation. As thus amended, as to these defendants-appellants, the judgment is affirmed.
Costs of appeal are assessed to plaintiffs.
NOTES
[1] § 178

If land burdened by a mineral right or rights created by fewer than all of the co-owners of the land is judicially partitioned, a partition in kind may not be ordered unless it can be accomplished in such fashion that the allocation of tracts to the co-owners assures that both surface and mineral values of each tract are in the same proportion to the total value of the surface and the mineral rights respectively as each co-owner's interest bears to the whole of the surface and the mineral rights respectively.