Frederick J. FREY, et al.

v.

AMOCO PRODUCTION COMPANY.

Civ. A. No. 88–1622.

United States District Court, E.D. Louisiana.

Feb. 28, 1989.

William S. Strain, Frederick W. Ellis, Strain, Dennis, Ellis, Mayhall & Bates, David M. Ellison, Jr., Ellison & Smith, Baton Rouge, La., for plaintiffs.

Frank J. Peragine, Thomas R. Blum, Simon, Peragine, Smith & Redfern, Clyde Mote, Jack Wilhelm, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

Before the Court are cross-motions for partial summary judgment filed by plaintiffs and defendant in the above-styled case. Plaintiffs, Frederick J. Frey, et al., contend that there are no material issues of disputed fact and that take-or-pay payments made to defendant, Amoco Production Company ("Amoco"), by Columbia Gas Transmission Corporation ("Columbia") are subject to the royalty provisions of plaintiffs' lease agreement with the defendant. The defendant, Amoco, contends that there are no material facts in dispute and that plaintiffs are not entitled to be paid royalty on the take-or-pay payments. Plaintiffs further contend that they are entitled to royalty on benefits Amoco received from "overproduction" under certain balancing agreements and other "side deals."

Plaintiffs' motion for summary judgment on the non-take-or-pay issues is without merit. Plaintiffs' description of these balancing agreements and other side deals and the reasons given for requiring royalty to be paid on these amounts are extremely vague, to say the least. Although plaintiffs attach copies of "balancing agreements" entered into between Amoco and other working interest owners, defendant disputes whether and to what extent there was "overproduction" in connection with these agreements. Further, defendant denies the existence of any "side deals" whereby Amoco alone benefitted, to the exclusion of plaintiffs' interests as Amoco's lessors. Regarding other "side deals," plaintiffs have failed to produce any evidence of the existence of material facts in order to show that they are undisputed. See *Heyward v. Public Housing Administration*, 238 F.2d 689, 696 (5th Cir.1956). Due to the existence of disputed facts regarding overproduction and balancing agreements and due to the dearth of evidence as to "side deals," plaintiffs' motion for summary judgment on the non-take-or-pay issues must be hereby DENIED.

The record, and the parties' cross-motions for partial summary judgment, statements of undisputed facts, and supporting affidavits attached thereto indicate that there are no material issues of disputed fact concerning the take-or-pay issues. Any disputed issues are disputes over legal issues or immaterial issues of fact. Accordingly, the Court finds the following facts to be undisputed.

1. In 1975, F & L Planters, a partnership composed of Frederick J. Frey and Edwin J. Leonards, acquired ownership of 731.06 acres of land in Pointe Coupee Parish, Louisiana (the land).

2. Thereafter, F & L Planters, as lessor, and Amoco, as lessee, executed an oil, gas and mineral lease effective October 21, 1975 (the "lease") affecting the land (the "leased premises"). All claims asserted by the plaintiffs in this lawsuit arise out of or relate to the lease. There is no factual dispute as to the content of the lease.

3. By act of partition dated March 1, 1978, Frey and Leonards each acquired sole ownership of about half of the leased premises, with the exception of about 17 acres that they continued to own in indivision. After execution of the act of partition, Frey and Leonards each transferred numerous royalty interests to various other persons, most of whom, with Frey and Leonards, are named as plaintiffs in this lawsuit.

4. Amoco, as seller, and Columbia, as purchaser, executed a contract for the sale and purchase of natural gas, dated May 18, 1981, pursuant to which gas produced by Amoco from the Morganza, Schwab and Ravenswood areas of Pointe Coupee Parish Louisiana, including the leased premises, was to be sold to Columbia (the "Morganza contract"). There can be no dispute as to the content of the Morganza contract.

5. Production of natural gas from the leased premises began about September 1, 1982.

6. Pursuant to Section 2 of the Morganza contract, Columbia was obligated to take and pay for, or pay for if available and not taken, certain minimum quantities of natural gas based on the deliverability of the wells drilled by Amoco (such quantities hereinafter referred to as "take-or-pay quantities").

7. Columbia, over time, failed to take the take-or-pay quantities required by the Morganza contract and failed to make take-or-pay payments.

8. In 1983, Amoco sued Columbia in suit number 83–11570, Division "L", Civil District Court, Orleans Parish, Louisiana ("state court suit"), alleging, *inter alia,* Columbia's breach of the take-or-pay provisions of the Morganza contract. Columbia answered the suit, asserting, *inter alia,* that its failure to take (or pay for) the take-or-pay quantities was excused under the Morganza contract.

9. By July 1, 1985, Amoco's claim against Columbia for an accumulated take-or-pay liability amounted, with respect to the Morganza contract, to about $265 million.

10. The state court suit was eventually settled by an agreement between Amoco and Columbia effective July 1, 1985. The question of Columbia's liability as of July 1, 1985 for failure to make take-or-pay payments under the Morganza contract was resolved by two payments: Columbia paid Amoco $20,891,791.00 as a non-recoupable take-or-pay payment, that is, without the right to recoup the payment by later taking gas in excess of the contractually required take-or-pay quantities; additionally, Columbia paid Amoco $45,633,076.00, retaining the right to recoup this second amount by taking during a year more than the take-or-pay quantities required by the Morganza contract as subsequently amended.

11. Columbia's right to recoup as set forth in the preceding paragraph may be exercised only within the five years commencing July 1, 1985. With respect to such recoupment, as Columbia takes gas during each year, it pays for such gas monthly. If, at the end of the year, Columbia's takes of gas exceed the take-or-pay quantity, Amoco restores to Columbia a portion of the recoupable take-or-pay payment depending on the amount of gas taken in excess of the take-or-pay quantity.

12. Amoco has paid royalty to plaintiffs on all amounts received by Amoco from Columbia (and others) in payment for gas produced and sold from the leased premises, including gas taken by Columbia in recoupment of its recoupable take-or-pay settlement payment to Amoco.

13. Amoco has not paid royalty on any liability incurred or payment made by Columbia with respect to Columbia's failure to take (or pay for) the take-or-pay quantities under the Morganza contract.

14. Columbia has recouped a significant portion of the recoupable take-or-pay payment it made to Amoco as part of the settlement. This recoupment has not caused any adjustment of, or reduction in, royalty paid to plaintiffs and Amoco's other lessors and royalty owners in the Morganza field.

15. The lease between plaintiffs and Amoco, in effect at the time the take-or-pay

payments were made, provides in pertinent part:

> 7. Subject to the provisions of Paragraphs 2 and 10 hereof, the royalties to be paid by Lessee are: ... (b) on gas, one-fifth (⅕) of the market value at the well of the gas used by lessee in operations not connected with the land leased or any pooled unit containing all or a part of said land; the royalty on gas sold by Lessee to be one-fifth (⅕) of the amount realized at the well from such sales; (c) one-fifth (⅕) of the market value at the mouth of the well of gas used by Lessee in manufacturing gasoline or other by-products....

■ Defendants contend that the Fifth Circuit's decision in *Diamond Shamrock Exploration Corp. v. Hodel*, 853 F.2d 1159 (5th Cir.1988), controls the question of whether royalty should be paid lessors on take-or-pay payments made by the gas purchaser to the lessee. In *Diamond Shamrock*, the lessee was required to pay the lessor royalty on "production saved, removed or sold from the leased area." In that case, the Court held that royalties were only due on "production," when gas was actually, physically severed and taken. *Id.* at 1165. Therefore, since there was no actual production or severance of minerals from the formation in connection with the take-or-pay payments, no royalties were due on such payments.

Although plaintiffs attempt to distinguish *Diamond Shamrock* based on the difference between the language of the lease in *Diamond Shamrock* and the lease here at issue, the *Diamond Shamrock* lease specifies payment of royalty on "... production saved, removed, or sold from the leased area." Whereas in the instant case, royalty must be paid on the "amount realized at the well from such sales."

Although the language of the lease here involved is different from that in *Diamond Shamrock*, this language is not ambiguous and clearly requires a *sale* of gas in connection with the payment of royalties. As in most natural gas leases, gas produced from the leased premises is transported by pipeline to the purchaser. Amoco cannot produce natural gas and then store it at the production site. Therefore, when the gas purchaser decides to take less than the daily contract quantity of gas, the producer, Amoco, is required to shut in the wells or restrict their production.

Louisiana law has clearly established that gas cannot be *owned*, let alone sold, until actually severed from the formation harboring it and reduced to possession. See La.R.S. 31:6; *Succession of Rugg*, 339 So.2d 519, *writ denied*, 341 So.2d 897 (La. App.1976). Louisiana Mineral Code article 7 defines reduction to possession as bringing the minerals under "physical control that permits delivery to another." La.R.S. 31:7. Natural gas is reduced to possession at the wellhead. *Steele v. Denning*, 445 So.2d 94 (La.App. 2d Cir.), *aff'd*, 456 So.2d 992 (La.1984).

The unambiguous language of the royalty agreement requires a "sale" of gas in connection with payment of royalty thereon. Louisiana law clearly establishes that a "sale" of gas cannot occur absent physical production and severance of the gas. Therefore, under Louisiana law, take-or-pay payments cannot be part of the sale price of natural gas.

■ Plaintiffs base their request for summary judgment on the take-or-pay issues on the assertion that Article 122 of the Mineral Code, La.R.S. 31:122, requires the lessee, Amoco, to share the benefits derived from these agreements with plaintiff lessors. However, plaintiffs have failed to come forward with a single Louisiana case construing Article 122 as requiring lessees to pay royalty on take-or-pay. Plaintiffs argue that "natural justice" and the mutual benefits article require that lessees share *all* the benefits derived from their leasehold interest with the lessors. However, as noted in *Diamond Shamrock*, take-or-pay payments are "intended to compensate primarily the producer, not the owner, of the minerals for the risks associated with development production." *Diamond Shamrock*, 853 F.2d at 1167. The lessee is the exclusive bearer of these risks. This is the very reason the lessor enters into a lease; in order to avoid the

risks of exploration, production and development and retain some benefit from ownership of the minerals through royalty payments. *Id.* In the instant case, this Court would follow the reasoning set out in *Diamond Shamrock* and decline to extend the mutual benefits article to require royalty to be paid on take-or-pay.

 Plaintiffs attempt to stretch the advisory comments of Mineral Code article 122 pertaining to the lessee's duty to market and apply them to this case. The advisory comment states that "A mineral lessee is under a duty to exercise due diligence to secure a market for minerals that have been produced or are capable of being produced in paying quantities." La.R.S. 31:122 Comment. The comment explains this reference to a duty to market minerals "capable of being produced." It states

> There is rarely a problem in this regard where oil is being produced, as ready markets can usually be found. Most problems arise in connection with the marketing of gas where the magnitude of reserves has not been proved, a market is not readily available, marketing facilities are not available, or administrative delays are involved.

The lessee's duty to market merely recognizes that the lessee cannot use the circumstance that it may face some difficulty in securing a market for certain reserves as an excuse for exercising less than due diligence in securing a market so that those reserves can be produced and sold.

Plaintiffs have not provided the Court with any case holding that this duty renders take-or-pay payments subject to royalty, and the Court has found no such cases. Plaintiffs cite as authority for their interpretation of the mutual benefits article, a Comment in 47 Louisiana Law Review 599 (1987) entitled "The Lessor's Royalty and Take-or-Pay Payments and Settlements Under Gas Sales Contracts in Louisiana." However, this article is not persuasive authority sufficient to refute the clear provisions of the Mineral Code and Louisiana jurisprudence cited herein. Other commentators have indeed reached different conclusions regarding take-or-pay. See Note, *To Pay or Not to Pay—The Fifth Circuit Divided: The Issue of Gas Royalties on Take-or-Pay Payments*, 62 Tul.L.Rev. 297 (1987).

 Plaintiffs argue that Amoco's duties to operate the lease in good faith and as a prudent operator established in Article 122 also require that Amoco pay royalty on take-or-pay. Again, plaintiffs cite no cases extending these duties to require that royalty be paid on take-or-pay payments, and this Court has found no such cases. No authority exists in support of plaintiffs' argument that the principles in Article 122 require a lessee to share all benefits from the lease with the lessor. In this situation, each party *benefits* from the lease. Plaintiffs receive royalty on amounts realized from the *sale* of gas, and where there are no amounts realized from such sales, plaintiffs retain ownership of the natural gas in the ground.

Accordingly, plaintiffs' Motion for Partial Summary Judgment on take-or-pay issues is hereby DENIED. Defendant's Motion for Partial Summary Judgment on take-or-pay issues is hereby GRANTED.