# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 11-162

CAROLYN PLUMMER SHERIDAN

VERSUS

TOMMY GORDON CASSEL

**********

## APPEAL FROM THE
## ELEVENTH JUDICIAL DISTRICT COURT
## PARISH OF SABINE, NO. 63,086
## HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

**********

## JAMES T. GENOVESE
## JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.

Cooks, J., dissents and assigns written reasons.

AFFIRMED.

Byron A. Richie
Paul D. Oberle, Jr.
Richie, Richie & Oberle
1800 Creswell Avenue
Post Office Box 44065
Shreveport, Louisiana 71134-4065
(318) 222-8305
COUNSEL FOR DEFENDANT/APPELLANT:
    Tommy Gordon Cassel

C. Sherburne Sentell, Jr.
Sentell Law Firm, L.L.C.
111 North Monroe Street
Post Office Box 875
Minden, Louisiana 71058-0875
(318) 377-0123
COUNSEL FOR PLAINTIFF/APPELLEE:
    Carolyn Plummer Sheridan

**GENOVESE, Judge.**

Defendant, Tommy Gordon Cassel, appeals a grant of summary judgment in favor of Plaintiff, Carolyn Plummer Sheridan, decreeing Ms. Sheridan to be the owner of all oil, gas, and other minerals under a certain 3.27-acre tract in Sabine Parish, Louisiana. For the following reasons, we affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL HISTORY

On August 13, 2010, Ms. Sheridan filed a petitory action against Mr. Cassel. Ms. Sheridan prayed for judgment declaring her to be "the true and lawful owner of all mineral rights under 3.27 acres lying in the Northwest corner of the East Half of the Southwest Quarter of Section 35, Township 9 North, Range 14 West, Sabine Parish, Louisiana." According to Ms. Sheridan's petition, the mineral rights to the 3.27 acres were sold by Mr. Cassel when he conveyed eighty acres to his sister, Gertrude Ray, on April 5, 1969. Ms. Sheridan alleged that Mr. Cassel "failed to reserve any mineral rights"; therefore, "all minerals under the entire [eighty-]acre tract passed to Gerturde Ray." According to Ms. Sheridan, after Gertrude Ray's death, Mr. Cassel sold all of his interest in Gertrude Ray's estate to her and that she owns all oil, gas, and other minerals under the 3.27-acre tract.

Mr. Cassel answered Ms. Sheridan's petitory action and alleged that "[t]he 3.27 acres of mineral rights at issue were specifically reserved by him when the surface was taken by the Sabine River Authority in June of 1966." He further contended that:

> The judgment of possession in the succession of Gertrude Ray as well as a quitclaim deed executed concurrent with the "conveyance and assignment of an interest of estate" clearly and absolutely showed the reservation and exclusion of the 3.27 acres of mineral rights under the Toledo Bend Reservoir. These interests were excluded because they were not owned by Gertrude Ray but remained in the ownership of [him] pursuant to the previously executed deed.

On September 27, 2010, Mr. Cassel filed a Motion for Summary Judgment on the issue of ownership along with a Statement of Undisputed Facts. In his motion, Mr. Cassel asserted that he "retained a permanent, non-prescriptable mineral servitude with respect to the 3.27 acres"; therefore, "there is no genuine issue of material fact with respect to ownership of this mineral servitude as he has never sold or conveyed said mineral servitude to [Ms. Sheridan] or any predecessor and [sic] title of [Ms. Sheridan]." Attached to his Motion for Summary Judgment were the following exhibits: Exhibit 1 – a Warranty Deed, dated December 27, 1965, wherein Mr. Cassel acquired eighty acres from Avis Cassel Thomas; Exhibit 2 – a Cash Sale, dated June 22, 1966, wherein Mr. Cassel transferred the 3.27-acre tract, excluding minerals, to the Sabine River Authority; Exhibit 3 – an Affidavit of Possession, dated June 22, 1966, wherein Mr. Cassel confirmed his possession of the 3.27-acre tract which he conveyed to the Sabine River Authority; Exhibit 4 – a Cash Sale, dated April 5, 1969, wherein Mr. Cassel transferred eighty acres to Gertrude Ray; Exhibit 5 – a Quitclaim Deed, dated March 18, 1980, wherein Mr. Cassel conveyed to Ms. Sheridan all of his interest in certain real estate belonging to the estate of Gertrude Ray; Exhibit 6 – a Judgment of Possession, dated April 9, 1980; and Exhibit 7 – a Conveyance and Assignment of Interest in [Gertrude Ray's] Estate dated March 18, 1980.

Ms. Sheridan also filed a Motion for Summary Judgment on the issue of ownership. In her motion, Ms. Sheridan reiterated her contention that when Mr. Cassel sold the eighty-acre tract to Gertrude Ray on April 5, 1969, Mr. Cassel did not reserve the mineral rights thereto, and, when she bought Mr. Cassel's interest in Gertrude Ray's estate in 1980, she acquired all mineral rights to the 3.27-acre tract.

With the exception of the Affidavit of Possession dated June 22, 1966, Ms. Sheridan attached to her motion the same exhibits offered by Mr. Cassel and, in addition thereto, Exhibit F – a ninety-nine year lease, dated June 24, 1966, wherein Mr. Cassel leased the surface of 1.84 acres of the 3.27-acre tract from the Sabine River Authority.

On December 8, 2010, the trial court denied Mr. Cassel's motion and issued an order granting Ms. Sheridan's Motion for Summary Judgment, wherein it held:

> Defendant, in the April 5, 1969 cash sale to Gertrude Cassel Ray, conveyed "all rights" to the subject 80 acres without reservation of the mineral rights he possessed from the sale of the subject 3.27 acres to the Sabine River Authority in 1966. Although Defendant possessed no surface property rights to the 3.27 acres, he did possess its mineral rights. Confined to the four-corners of the cash sale contract, Defendant did convey "all rights" to the property as described that includes said 3.27 acres. Thus, Defendant transferred 76.73 surface acres and 80 mineral acres to [Gertrude Ray] that remained with her until her death.

Mr. Cassel appeals.

## ASSIGNMENT OF ERROR

On appeal, Mr. Cassel asserts the following assignment of error:

> [T]he trial court erred as a matter of law in denying [his] Motion for Summary Judgment [and] granting the Motion for Summary Judgment of [Ms. Sheridan], finding that [he] conveyed a mineral servitude where this incorporeal immovable was not described in the deed, and [he] did not own the surface at the time the deed was executed.

## STANDARD OF REVIEW

The Louisiana Supreme Court has set forth the governing jurisprudence relative to a motion for summary judgment and our appellate standard of review as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La. 11/29/06), 950 So.2d 544, *see* La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination

3

of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La. 3/9/07)], 951 So.2d 1058[]; *King v. Parish National Bank*, [04-0337 (La. 10/19/04)], 885 So.2d 540[]; *Jones v. Estate of Santiago*, [03-1424 (La. 4/14/04)], 870 So.2d 1002[.]

*Samaha v. Rau,* 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote

omitted).[1] Louisiana Code of Civil Procedure Article 966 provides:

A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.

(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.

B. The motion for summary judgment, memorandum in support thereof, and supporting affidavits shall be served within the time limits provided in District Court Rule 9.9. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 within the time limits provided in District Court Rule 9.9. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to

---

[1]Although applying the former version of La.Code Civ.P. art. 966, the applicable standard of review remains the same. *See* 2010 La. Acts No. 690, § 1.

4

point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.

E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case; however, a summary judgment shall be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time.

F. When the court determines, in accordance with the provisions of this Article, that a party or nonparty is not negligent, not at fault, or did not cause, whether in whole or in part, the injury or harm alleged, that party or nonparty may not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty nor shall the issue be submitted to the jury. This Paragraph shall not apply when a summary judgment is granted solely on the basis of the successful assertion of an affirmative defense in accordance with Article 1005.

## DISCUSSION

On appeal, Mr. Cassel argues in brief:

[Ms. Sheridan]'s position, in fact this entire lawsuit, is based upon a red herring. Essentially, [Ms. Sheridan] contends that when [he] made a conveyance in 1969 to [Gertrude] Ray of "the East half of the Southwest Quarter . . . of Section 35, Township 9 North, Range 14 West, containing 80 acres, more or less," he conveyed not only the 77 acres that he owned but also a mineral servitude over 3.27 acres of surface interest that he did not own. The red herring relied upon exclusively by [Ms. Sheridan] is that since [he] did not reserve minerals in the 1969 deed, he must have conveyed the mineral rights to the 3.27 acres of surface interest that he did not own.

According to Mr. Cassel, "a reservation of mineral rights is essential when one is transferring surface ownership, but when no surface ownership is transferred, then a

reservation of minerals as to the 3.27 acres would be both unnecessary and . . . bizarre."

Ms. Sheridan counters, arguing that when Mr. Cassel purchased the eighty acres from Avis Cassel Thomas on December 27, 1965, "[t]he deed had no mineral reservation. Therefore[,] all minerals under the [eighty-]acre tract were bought by Tommy Cassel." However, to benefit his position, Mr. Cassel argues that a reservation of the mineral rights within the language of a conveyance was not necessary when he sold the eighty acres to Gertrude Ray in 1969. We disagree.

"Ownership of immovable property (which includes mineral rights) in dispute must be determined from the public records. A conveyance of land carries with it all incidents of ownership, including mineral rights, except such rights as may be expressly reserved." *Texaco, Inc. v. Newton & Rosa Smith Charitable Trust*, 471 So.2d 877, 882 (La.App. 2 Cir. 1985), *writ denied*, 475 So.2d 1104 (La.1985) (citing *Roemer v. Caplis*, 369 So.2d 1186 (La.App. 2 Cir.), *writ denied*, 371 So.2d 620 (La.1979).

We find that the trial court correctly granted summary judgment in favor of Ms. Sheridan, finding that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. As correctly stated by the trial court, when Mr. Cassel sold "all rights" to eighty acres to Gertrude Ray in 1969, the oil, gas, and other minerals under the 3.27-acre tract were also conveyed. Therefore, when Mr. Cassel sold all of his "right, title, claim and interest, real and personal, in and to the Estate of Gertrude C. Ray . . . including . . . all movables and immovables in the State of Louisiana," to Ms. Sheridan in 1980, the oil, gas, and other minerals under the 3.27-acre tract were included therein and likewise conveyed.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of these proceedings are assessed against Defendant/Appellant, Tommy Gordon Cassel.

**AFFIRMED.**

CAROLYN PLUMMER SHERIDAN

VERSUS

TOMMY GORDON CASSEL

**COOKS, J. DISSENTS**

Tommy Gordon Cassel (Cassel) sold 80 acres more or less to his sister, Gertrude Cassel Ray (Ray), in 1969 without a reservation of mineral rights. Prior to that sale, the Sabine River Authority acquired 3.27 acres of that 80 acre tract from Cassel in 1966 with Cassel reserving the mineral rights to himself. After Ray's death Cassel sold all of his interest in Ray's estate to Carolyn Plummer Sheridan (Sheridan) and recited in the deed he was conveying to Sheridan all of his "right, title, claim and interest, real and personal, in and to the Estate of Gertrude C. Ray ... including... all movables and immovables in the State of Louisiana." Sheridan filed a petitory action in 2010 claiming ownership of the mineral rights in the 3.27 acre tract by virtue of the cash deed which conveyed 80 acres, more or less, to Ray because, she asserts, that deed did not contain a reservation of mineral rights.

The majority affirms the trial court's grant of summary judgment decreeing Sheridan the owner of the mineral rights on the 3.27 acre tract and denying Cassel's motion for summary judgment. For the reasons stated below I respectfully dissent.

As the majority states, we review motions for summary judgment de novo. I believe the evidence submitted in support of Cassel's motion for summary judgment demonstrates Cassel is the owner of the mineral rights on the 3.27 acre tract as a matter of law and summary judgment should have been granted in his favor.

1

By cash sale dated June 22, 1966, Cassel sold to the Sabine River Authority a 3.27 acre tract in the "east ½ of SE1/4, Section 35, T 9 N, R 14 W, Sabine Parish, Louisiana." This 3.27 acre tract is particularly described by meets and bounds in the cash sale to Sabine carving it out of the original 80 acre tract. Cassel expressly reserved and excepted from that sale and "in perpetuity, all of the oil, gas and other minerals in, on and under said lands. . ." This conveyance, with a reservation of mineral rights in favor of Cassel, **created a new personal property right, a servitude**, belonging to Cassel individually. Sabine became the naked owner of all mineral rights under this 3.27 acre tract subject to the servitude in favor of Cassel. Cassel's interest in the minerals under this particular tract changed from full ownership to merely a servitude giving him the right to explore for and reduce to his possession minerals found under Sabine's tract. On the other hand, Cassel's full ownership interest in the minerals under the remaining 77 acre tract did not change.

Three years later, in a cash sale dated April 5, 1969, Cassel conveyed the following to Gertrude Ray:

> Tommy Gordon Cassel, husband of Mary Vergilie Cobb, who declared that he does by theses presents, Grant, Bargain, Sell, and Convey and Deliver with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto Gertrude Cassel Ray, a widow, the following described property, situated in the Parish of Sabine, Louisiana, to wit: The East half of the Southwest Quarter (E1/2 of SE1/4) of Section 35, Township 9 North, Range 14 West, containing 80 acres, more or less, together with all buildings and improvements thereon. To have and to hold said described property unto purchaser her heirs and assigns forever. This sale is made for the consideration of the sum of ($10.00) Ten & no/100 Dollars and other good and valuable considerations, cash in hand paid, the receipt of which is hereby acknowledged."

In a Quitclaim Deed dated March 18, 1980, Cassel conveyed and delivered to Sheridan "all of his interest including the life estate and/or usufruct in and to" certain described properties which included Tract # 3 described as "The E/2 of the

2

SE/4 of Section 35, Township 9 North, Range 14 West, less a 3.27 acre tract in the northwest corner, Sabine Parish, Louisiana, containing 77.0 acres, more or less." On the same date, in a document entitled "Conveyance and Assignment of Interest in Estate", Cassel conveyed to Sheridan:

> [A]ll of my right, title, claim and interest, real and personal, in and to the Estate of Gertrude C. Ray, deceased, including, but not limited to all real property and all personal property of said estate in the State of Mississippi, and all movables and immovables in the State of Louisiana, including the life estate and/or usufruct on the above properties, and all rents, profits and income heretofore accruing thereon, and all other properties and assets of said estate, wheresoever located, and of whatsoever kind and nature, and all rights and claims of said estate of every kind and character."

Subsequently, a Judgment of Possession in the estate of Ray was signed on April 9, 1980 which recognized Cassel as owing an undivided one-half interest of a usufruct over the 77 acre tract and recognizing Sheridan as the naked owner of all of the property described therein as "The E/2 of the SE/4 of Section 35, Township 9 North, Range 14 West, less a 3.27 acre tract in the northwest corner, Sabine Parish, Louisiana, containing 77.0 acres, more or less."

Examining these documents reveals the public record clearly shows a 3.27 acre tract, identified by a meets and bounds description, was sold by Cassel to Sabine prior to his sale of the remaining approximately 77 acres to Ray. In the sale to Sabine, Cassel reserved the mineral rights over that specific tract to himself creating a new mineral servitude in his favor. Louisiana Civil Code Article 727 provides "A predial servitude may be established on a certain part of an estate, if that part is sufficiently described," and Article 698 of the Louisiana Civil Code provides "Predial servitudes are established on, or for the benefit of, distinct corporeal immovables." In Cassel's sale to Sabine, the 3.27 acre tract is particularly described by meets and bounds and it is over this particularly described tract that Cassel establishes a new servitude of

3

mineral rights. The Mineral Code, at La.R.S. 31:21 provides "A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." Our courts have held that a sale or reservation of minerals **creates** a real right in the nature of a servitude. *Steele v. Denning*, 445 So.2d 94, (LA. App. 2 Cir. 1984), *writ granted* 448 So.2d 109, *affirmed* 456 So.2d 992. The Louisiana Supreme Court has held that servitudes, such as the right to mine minerals, when extending over separate tracts of land, constitute **distinct servitudes** and therefore held the exercise of the right over one tract will not preserve the right over the other distinct tract. *Lee v. Giauque*, 97 So. 669 (La. 1923). And in *Ohio Oil v. Fergusson*, 34 So.2d 746 (La. 1946) the Louisiana Supreme Court stated that *Lee v. Giauque*, 154 La. 491, 97 So. 669, is "authority for the proposition that where the mineral rights are reserved on two or more separate tracts of land the effect is to establish as many servitudes as there are tracts of land".

The sale to Ray did not and could not include the 3.27 acre tract which was carved out of the original 80 acre tract nor did that sale include the separate and distinct mineral servitude in favor of Cassel over that 3.27 acre tract created by his sale to Sabine. Thus, the estate of Ray did not include the 3.27 acre tract nor the mineral servitude in favor of Cassel over that specific tract. Ray's estate owned approximately 77 acres and the mineral rights appertaining to those acres only.

Therefore, as a matter of law, Cassel created a new and distinct mineral servitude over a particularly described tract of land which he never conveyed to Ray's estate, nor to anyone else, which still belongs to him. I would reverse the judgment of the trial court and grant summary judgment in favor of Cassel.

4