885 So.2d 540 (2004)
Everett KING
v.
PARISH NATIONAL BANK, James Venezia, Wendell Fornea, James A. Morse, Scoggin & Associates, Steve W. Scoggin and A.R. Blossman, III, ABC Insurance Company and XYZ Insurance Company.
No. 2004-C-0337.
Supreme Court of Louisiana.
October 19, 2004.
Rehearing Denied November 24, 2004.
*542 Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, L.L.C., John Anthony Dunlap, New Orleans, August J. Hand Law Firm, LLC, August J. Hand, Counsel for Applicant.
Ezkovich & Co., Alan David Ezkovich, New Orleans, Bonin Law Firm, Paul Alexandre Bonin, New Orleans, Counsel for Respondent.
KIMBALL, Justice.
The issue presented by this case is whether the prohibition against enforcement of actions on oral credit agreements, found in La. R.S. 6:1121 et seq., applies to causes of action for bad faith when such actions are based on oral assurances and previous dealings relating to a loan consolidation and subsequent renegotiation. For the reasons that follow, we conclude that the Louisiana credit agreement statute precludes all claims, including bad faith breach and bad faith acts, when predicated on the existence and enforceability of oral credit agreements and implied agreements based on the creditor's and debtor's previous relationship. Furthermore, we find that the provisions of La. R.S. 6:1121 et seq., extend to bar claims based on oral credit agreements against a creditor's employees when the employees are acting within the course and scope of employment. However, we find La. R.S. 6:1122 is inapplicable to the bad faith claims against the appraisers and appraisal company since these claims are outside the parameters of the statute. Therefore, we reverse the court of appeal's judgment in regards to PNB and its employees, and reinstate the district court's grant of summary judgment, but we affirm the court of appeal's judgment denying summary judgment to the appraisers and appraisal company and remand the case to the district court for further proceedings.

Facts and Procedural History
In March 1990, Everett King consolidated his individual loans, each secured with mortgages over various immovable properties, with Parish National Bank (hereinafter "PNB") into a single promissory note in the full principle amount of $711,641.65 with interest fixed at the rate of 12.25%. This promissory note was payable on demand; however, it provided for 35 monthly payments with a final balloon payment of *543 the full balance on March 23, 1993, if no prior demand was made. PNB required this consolidation and cross-collateralization of King's loans before it would provide additional financing for his business expansion. At the time of this loan consolidation, King had established a good relationship with the bank, borrowing funds over the years for the construction and development of his business facilities and fast food restaurants. King alleges that PNB officer Wendell Fornea assured him that the loan consolidation and restructuring would not impair or jeopardize King's financial and personal welfare as long as he remained current in all his obligations with the bank.
In January or February 1993, PNB contacted King regarding the approaching maturity date of the 1990 Note. PNB informed him that it would require acceptable appraisals on the collateral property, as well as his income and financial information, before the note's maturity date or it would require the entire balance to be paid in full. However, PNB did not request appraisals of the immovable properties securing the loans at the time of the 1990 loan consolidation. Scoggin & Associates performed appraisals on various immovable properties and land parcels owned by him in February and March 1993. Two of the appraisals were performed by A.R. Blossman III,[1] an uncertified appraiser who was the son and nephew of the president and chairman of PNB,[2] in conjunction with a certified appraiser, Steve Scoggin. These appraisals indicated that King's property afforded insufficient collateral for the consolidated loan; therefore, PNB refused to renew the loan on its current terms and security. After several months of negotiation and in order to avoid foreclosure or bankruptcy, on December 18, 1993, King and PNB perfected a workout in which King gave PNB certain properties[3] as dations en paiment and a note for $204,653.27 secured by a collateral mortgage.
On November 30, 1994, King filed suit against PNB, PNB employees James Venezia, James A. Morse, and Wendell Fornea, Scoggin & Associates, Steve Scoggin, A.R. Blossman, III, XYZ Insurance Company (fictitious name for PNB's insurer), and ABC Insurance Company (fictitious name for Scoggin & Associates' insurer). King alleged several causes of action in tort, breach of quasi-contractual obligations, error, fraud, and duress based on defendants' actions and roles surrounding the 1990 loan consolidation and 1993 workout. Specifically, King's petition asserted that:
19.
The defendant bank acted in bad faith with your petitioner (1) by unnecessarily and without just cause requiring him to obtain and pay for so-called "current" appraisals, (2) by failing to afford him the opportunity to select and/or utilize an appraisal service, and/or appraiser who was knowledgeable, experienced, competent and qualified in appraising *544 the types of specialty commercial properties owned and operated by your petitioner, and (3) by failing to adequately prevent and/or prohibit the utilization of an employee of the appraisal firm who had a direct, indirect and/or beneficial interest in the earnings and assets of the defendant bank....
25.
As a result of the overreaching and bad faith dealings of the defendants with your petitioner he was caused to lose a fast-food chicken outlet business in Mandeville and a building supply business in Bogalusa.
Defendants filed an initial motion for summary judgment on August 7, 1995, which the district court later denied. King then filed a First Amending and Supplemental Petition substituting St. Paul Insurance Company for XYZ Insurance Company and Bankers Multiple Line Insurance Company for ABC Insurance Company; however, Bankers is no longer a party to this matter as the district court granted its motion for summary judgment based on the insured's failure to timely notify them in writing of the claim.
On April 6, 2002, defendants filed a second motion for summary judgment and rule to show cause contending that all causes of action regarding the 1990 loan and renewal negotiations related to oral assurances by PNB are precluded as a matter of law under La. R.S. 6:1122, which provides that oral credit agreements are not enforceable. Furthermore, they claimed that King's causes of action for fraud, duress, and error were precluded because of his knowledge of the alleged fraudulent acts and lack of reliance. King did not file memorandum, evidence, or affidavits, and did not appear at the hearing, and thus, failed to respond to the motion in any way. Following the hearing, the district court granted defendants' motion for summary judgment finding Louisiana law precluded King's claims as a matter of law.
King filed a devolutive appeal. The court of appeal affirmed the district court's judgment granting defendants' motion for summary judgment in part, but reversed that portion of the trial court's judgment granting summary judgment on the issue of bad faith conduct in relation to the loan renegotiation in 1993. King v. Parish Nat'l Bank, 03-0023 (La.App. 1 Cir. 9/26/03), 855 So.2d 436. The court of appeal agreed with the trial court's determination that any issues, theories or causes of action arising prior to the loan renewal negotiations that cumulated in the 1993 workout between King and PNB were precluded as a matter of law under Louisiana's credit agreement statutes. La. R.S. 6:1121 et seq. Relying in part upon this court's decision in Jesco Constr. Corp. v. Nationsbank Corp., 02-0057 (La.10/25/02), 830 So.2d 989, which applied a statute of frauds-like requirement to "all actions" to lend money between a borrower and creditor, the court of appeal held that none of King's allegations regarding PNB's representations or conduct in connection to the negotiation of the 1990 consolidated loan or PNB's decision to require payment could be the basis for legal action because there was no writing. Thus, the court of appeal concluded that King's claims regarding PNB's abuse of rights, breach of quasi-contract, fraud, error, and duress in relation to the aforementioned 1990 loan were precluded as a matter of law. Additionally, the court of appeal affirmed the trial court's grant of summary judgment in favor of defendants as to King's assertions of fraud, error, and duress in connection with the 1993 workout. The court agreed that King's knowledge of the deficient appraisals defeated his claims of fraud and error. Finding that the threat of doing a lawful act or enforcing a legal right does not constitute duress, the court of appeal *545 concluded that King's claims of duress relating to the calling of the demand note were precluded.[4] However, the court found King's allegations that PNB "acted unreasonably and breached its duty of good faith in requiring an appraisal, causing him harm" were causes of action not precluded by law. Citing La. C.C. arts. 1759 and 1983, which impose an obligation of good faith with regards to all conduct pertaining to every contract, the court of appeal determined that the evidence regarding the requirement of an appraisal, the requirement that King use a particular appraiser without options, the use of an uncertified appraiser who had an intimate relationship to the PNB, and the fact that the appraisal was significantly lower than expectations all provided enough support to allow a fact finder to find the defendants liable for acts of bad faith in these dealings. Furthermore, the court of appeal concluded that liability under this theory requires determinations of credibility and the intent of the parties, determinations that are not allowed in summary judgment. Therefore, the court of appeal concluded that the district court erred in granting summary judgment as to King's cause of action for bad faith acts regarding the 1993 workout and reversed the district court's judgment on this issue.
We granted certiorari to consider whether the Louisiana credit agreement statutes, La. R.S. 6:1121 et seq., preclude all of King's causes of action regarding his 1993 workout with PNB against the defendants. King v. Parish Nat'l Bank, 04-0337 (La.4/23/04), 870 So.2d 281.

Law and Discussion
Favored in Louisiana, the summary judgment procedure "is designed to secure the just, speedy, and inexpensive determination of every action" and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B); Jones v. Estate of Santiago, 03-1424, p. 4 (La.4/14/04), 870 So.2d 1002, 1006.
Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Ocean Energy, Inc. v. Plaquemines Parish Gov't, 04-0066 (La.7/6/04), 880 So.2d 1. The movants, here defendants, bear the burden of proof. La. C.C.P. 966(C)(2). However, because the instant defendants will not bear the burden of proof at trial, it is not necessary that they negate all essential elements of King's action, but rather that they merely point out to the court that there is an absence of factual support for one or more elements essential to King's action. Id; Richard v. Hall, 03-1488, p. 4 (La.4/23/04), 874 So.2d 131, 137. If defendants meet this initial burden, the burden then shifts to King to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. Richard at p. 4, 874 So.2d at 137. Thereafter, if King fails to meet this burden, there is no genuine issue of material fact and movants are entitled to summary *546 judgment as a matter of law. Id. This court has recognized that a "genuine issue" is a "triable issue," an issue in which reasonable persons could disagree. Jones at p. 6, 870 So.2d at 1006 (citing Smith v. Our Lady of the Lake Hosp., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). Further, this court has defined a "material fact" to be one in which "its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." Id.
In the instant case, the sole issue presented for our review is whether King is prohibited by La. R.S. 6:1122 from asserting any cause of action against PNB, its employees, or its designated appraisers regarding their actions and conduct relating to the renegotiation of the 1990 consolidated loan cumulating in the 1993 workout plan when the bases of such claims are: (1) the oral assurances made by a PNB employee on behalf of PNB that the 1990 restructuring of King's financial obligations to the bank would not in any way impair or otherwise jeopardize his financial and personal welfare as long King remained current in his obligations, and (2) the bank's requirement that King obtain current appraisals on collateral property when such appraisals were not required previously of King in order to procure financing.
Credit agreement statutes embody legislative reaction to the surge of lender liability litigation in the late 1980s and were enacted primarily to limit the most frequent lender liability claims, which included assertions of a breach of oral commitments to lend, to refinance or to forbear from enforcing contractual remedies, by instituting a so-called statute of frauds and requiring such agreements to be in writing to be enforceable. Whitney Nat'l Bank v. Rockwell, 94-3049, p. 7 (La.10/16/95), 661 So.2d 1325, 1329. The primary legislative purpose of these statutes was "to establish certainty as to the contractual liability of financial institutions," which would in turn limit lender liability lawsuits based on oral agreements. Id.
In 1989, the Louisiana Legislature enacted the credit agreement statutes, La. R.S. 6:1121 et seq., in Chapter 16 of Title 6, which is entitled Credit Agreements  Writing Requirements. La. R.S. 6:1122, entitled "Credit Agreements to be in writing," expressly prohibits an action against a creditor based on an oral credit agreement, providing that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." La. R.S. 6:1121(1) defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." (emphasis added). Furthermore, the credit agreement statutes define which actions are not to be construed as new credit agreements between a creditor and a debtor. La. R.S. 6:1123, entitled "Actions not considered agreements," provides:
A. The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
(1) The rendering of financial or other advice by a creditor to a debtor.
(2) The consultation by a creditor with a debtor.
(3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.

*547 B. A credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor.
Moreover, these statutes provide that neither a financial institution nor an employee has a fiduciary obligation to its customers unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform as a fiduciary. La. R.S. 6:1124.
In Jesco Construction Corp. v. Nationsbank Corp.,[5] 02-0057, p. 4 (La.10/25/02), 830 So.2d 989, 992, this court held that the Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted. This court recognized that allowing debtors to bring actions predicated upon oral agreements to lend money, but on theories other than breach of contract, thereby circumventing the writing requirement of the credit agreement statute, would "thwart the intent of the legislature and render the entire statute meaningless." Id. In Jesco, the plaintiff's petition asserted actions for breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty. Id. Since the basis for each cause of action was the failure by the creditor to make a loan based upon an alleged oral credit agreement, this court held that each and every cause of action in the petition was barred by La. R.S. 6:1122. Id.
In the present case, defendants argue that King's cause of action arising from defendants' alleged bad faith dealings in the 1993 workout is clearly a lender liability claim based on oral representations and course of dealing that the credit agreement statute was designed to prevent. As such, defendants argue that King's claim is precluded by La. R.S. 6:1122 and as it was interpreted by this court in Jesco since there exists no writing evidencing the alleged agreement between defendants and King.
Defendants' entitlement to summary judgment on the bad faith breach claim is dependent upon whether they have shown the facts alleged by King in his petition, taken as true for the purposes of this motion, establish a cause of action based on "an action on a credit agreement" pursuant to La. R.S. 6:1122. If defendants can meet this initial burden then the burden would shift to King to establish by adequate factual support that he will be able to satisfy his burden at trial.
King's petition essentially asserts that: (1) PNB required him to consolidate and "cross-collaterialize" his current obligations in 1990 in order to secure additional financing from the bank; (2) at the time of the consolidation, PNB employee, Mr. Fornea, assured him that his financial and personal welfare would not be impaired or jeopardized by this consolidation as long as he was current with his obligations; (3) upon maturity of the consolidated loan, PNB required King to obtain "current" appraisals of the property securing the loan to be performed by an appraiser chosen by the bank in order to determine if the collateral was sufficient for the amount of the indebtedness; and (4) PNB used these appraisals prepared by an uncertified appraiser "as a pretext" to deny him further credit, in contrast to the bank's promises and previous course of dealings with King.
*548 King asserts that his bad faith claim against PNB regarding its failure to comply with its obligation to not impair or jeopardize King's financial and personal welfare with respect to the loan consolidation is outside the parameters of the credit agreement statute because it is based on the bad faith conduct of defendants during the loan renegotiation, and not the 1990 promissory note. Under La. R.S. 6:1121(1), a credit agreement includes an agreement to make any financial accommodation. The alleged obligation that the 1990 loan would not impair King's welfare if he remained current with PNB was in effect an agreement by PNB to make financial accommodations to King regarding the loan if King remained current in his obligations to PNB. Therefore, PNB's alleged obligation to not impair King's personal and financial welfare in connection to the loan consolidation was a credit agreement that must be in writing to be enforceable. Since King produced no writing evidencing such an agreement, his claim of bad faith against PNB based on these oral assertions is precluded by the credit agreement statute.
In addition, King alleges a cause of action for bad faith against PNB for requiring him to obtain appraisals on the mortgaged property in order to determine if PNB would extend credit on the consolidated loan or if it would require immediate payment since the note had reached maturity. King predicates his claim of bad faith regarding the appraisal requirement on the fact that prior to 1993, and at the time of the loan consolidation, PNB did not require appraisals of the properties then subject to the mortgages. King appears to assert that since PNB previously did not require such appraisals for credit extension, the good standing relationship between PNB and King would preclude PNB from requiring such appraisals for future credit extensions on the properties. However, "[a] credit agreement shall not be implied from the relationship, fiduciary, or otherwise, of the creditor and the debtor." La. R.S. 6:1123(B). Furthermore, certain actions will not give rise to a new credit agreement unless the agreement satisfies the writing requirements of R.S. 6:1122, including "the agreement of a creditor to take or not to take certain actions." La. R.S. 6:1123(A)(3). In Whitney, this court concluded that La. R.S. 6:1123(A)(3) "in effect treats certain actions or representations of creditors as if they were credit agreements and requires that they be put in writing to be enforceable." 94-3049 at p. 11, 661 So.2d at 1331. Essentially, King is asserting an implied agreement between PNB and himself not to require appraisals on mortgaged property in order to secure credit based on the previous relationship and actions of the two parties. Such an agreement, based on PNB and King's previous commercial relationship, is expressly precluded by La. R.S. 6:1123(B) and is not enforceable without a written agreement.
Consequently, the underlying bases for each and every allegation of bad faith are the 1990 alleged oral assertions of a PNB employee, acting within the course and scope of his employment, and the previous business relationship of King and PNB. King's bad faith claim is precisely the type of action precluded by La. R.S. 6:1122. We therefore conclude that PNB, a defined creditor under the statute,[6] is entitled to a summary judgment as a matter of law on King's claim of bad faith regarding the 1993 workout.
*549 Furthermore, we conclude that defendants Venezia, Fornea, and Morse, as employees of PNB, are also entitled to summary judgment as a matter of law under the credit agreement statute. Although plaintiff's petition is not entirely clear on which acts of bad faith were committed by which defendant, it is clear that the alleged actions of the three aforementioned defendants upon which plaintiff's allegations are predicated were done in the course and scope of their employment with PNB. Because they were acting in their employment capacities with PNB, we find the provisions of the credit agreement statute, which preclude King's claim against PNB, also preclude his claims against PNB's employees. To allow otherwise would provide a means to circumvent the credit agreement statutes by merely asserting a bad faith or breach of contract claim against the bank employee instead of the institution itself. Such a result would render the statute effectively meaningless and thwart the clear legislative intent expressed by the statutes. Thus, to the extent that plaintiff seeks to assert a cause of action against defendants Venezia, Fornea, and Morse for their actions in relation to the alleged oral credit agreement and prior relationship between the parties, we find King's claims precluded as a matter of law under the credit agreement statutes for the same reasons as those that preclude the claim against PNB.
Turning now to King's claim against Scoggin & Associates, Mr. Scoggin and Mr. Blossman for acts of bad faith with respect to the loan renegotiation and work, we conclude that the credit agreement statutes does not apply to preclude the claims and it is not appropriate to dispose of them by summary judgment.
As previously noted by this court, the primary purpose of credit agreement statutes is to discourage borrowers from asserting causes of action against lenders based upon oral agreements to lend money, to forbear or other financial accommodations. Jesco, 830 So.2d at 992. La. R.S. 6:1122 prohibits "an action [by a debtor] on a credit agreement unless the agreement is in writing." A "credit agreement" is an agreement to lend money, to forebear repayment of money, or to make any other financial accommodation. La. R.S. 6:1121(1). In the instant case, King's claims against the appraisal company and individual appraisers do not implicate any alleged credit agreement. Consequently, the credit agreement statutes are inapplicable to these claims. Although plaintiff's petition does not clearly differentiate among the defendants in its allegations of bad faith acts and bad faith breaches, it appears that his claims against the appraisal company and individual appraisers do not arise from the alleged oral agreement not to impair King's financial and personal welfare or out of his prior relationship with the bank. Rather, King's claims result from the actions of these particular defendants in relation to their performance of the commercial property appraisals plaintiff hired these defendants to render. Therefore, these claims against Scoggin & Associates, Mr. Scoggin and Mr. Blossman do not fall under the protection of the credit agreement statutes since they are not predicated upon any alleged credit agreement with PNB. Further, summary judgment is not appropriate against these defendants because the petition and depositions provide enough factual support for a reasonable fact finder to find acts of bad faith on the part of the appraisers and appraisal company. Thus, the court of appeal was correct in reversing the district court's grant of summary judgment on this cause of action against Scoggin & Associates, Mr. Scoggin and Mr. Blossman.

*550 Decree
For the foregoing reasons, the judgment of the court of appeal with respect to defendants PNB, Mr. Venezia, Mr. Fornea and Mr. Morse is reversed and the grant of summary judgment by the district court is reinstated. The court of appeal's judgment regarding defendants Scoggin & Associates, Mr. Scoggin, and Mr. Blossman is affirmed.
REVERSED IN PART: DECISION OF DISTRICT COURT REINSTATED; AFFIRMED IN PART AND REMANDED.
CALOGERO, C.J., dissents in part and assigns reasons.
CALOGERO, Chief Justice dissenting in part.
I respectfully dissent from the majority's conclusion that all of the causes of action asserted by plaintiff against the defendant bank and its employees are barred by the prohibition against enforcement of actions on oral credit agreements set forth in La.Rev.Stat. 6:1121 et seq. As I expressed in my dissent in Jesco Construction Corp. v. Nationsbank Corp., XXXX-XXXX (La.10/25/02), 830 So.2d 989, the language of that statute does not preclude causes of action based on fraud, misrepresentation, promissory estoppel or other equitable theories that are alleged in this case. See Whitney National Bank v. Rockwell, 94-3049, p. 11 (La.10/16/95), 661 So.2d 1325, 1331. Rather, the statute prohibits only actions "on a credit agreement" that has not been reduced to writing, indicating that it prohibits only breach of contract causes of actions on oral credit agreements. I would reverse the court of appeal's finding that plaintiff's claims against defendants based on abuse of rights, breach of quasi-contract, fraud, error and duress in relation to the 1993 loan are precluded as a matter of law.
NOTES
[1] Mr. Blossman performed the appraisals on the two Kristy's Fried Chicken restaurants located in Covington and Mandeville, Louisiana.
[2] The record indicates that Mr. Blossman's father and uncle at times traded positions within the bank's management.
[3] The bank received 3 properties, 1.435 acres of land in Bogalusa, Louisiana, and a 1.19 acre tract of land and a 1.25 acre tract of land located in Washington Parish, in 2 Acts of Cash Sale through the workout plan. Three properties, a 2.24 acre tract of land located on Louisiana Highway No. 21, a 1.0 acre tract of land referred to as the Kristy's building in Washington Parish, and the property consisting of Kristy's Mandeville, were transferred as Partial Dations en Paiment as well.
[4] Because King did not apply for cert. on the issues pertaining to the 1990 loan consolidation or to King's assertions of fraud, duress, and error, the court of appeal's judgment on these matters is final. Chaisson v. Cajun Bag & Supply Co., 97-1225, pp. 7-8 n. 1 (La.3/4/98), 708 So.2d 375, 380 n. 1.
[5] Jesco involved a certified question to this court by the United States Fifth Circuit Court of Appeal. Jesco Const. Corp. v. NationsBank Corp., 278 F.3d 444, 448 (5th Cir.2001).
[6] La. R.S. 6:1121(2) defines "creditor" as "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor."