DANIEL L. DYSART, Judge.
 

 L Mendy Properties, LC, and Mendy & McElroy appeal a summary judgment granted in favor of Enterprise Leasing Company of New Orleans. For the following reasons, we affirm.
 

 
 *774
 
 FACTS AND PROCEDURAL HISTORY:
 

 Enterprise Leasing Company of New Orleans (hereinafter “Enterprise”) entered into a lease agreement with Mendy Properties, LC (hereinafter “Mendy”) to lease a portion of a building located at 4334 Earhart Boulevard in New Orleans. The subject lease commenced on October 1, 2001, and was to terminate on the last day of the sixty-third full calendar month thereafter. The lease also provided that either party could terminate the lease after December 31, 2002, upon not less than ninety days prior written notice. If Enterprise moved to terminate, the termination date would be the date specified in the written notice, and Enterprise would be obligated to pay Mendy three additional month’s rent as a penalty.
 

 Enterprise was permitted to refurbish the exterior and relocate the entrance to the building without Mend/s approval, as long as the changes were consistent 12with Enterprises’ trade dress and standard colors. Additionally, the lease permitted the installation of a satellite dish antenna and other communication devices, provided the roof would not be damaged in the installation. Enterprise was to remove the equipment at the end of the lease, and to repair any damage caused by installation or removal.
 

 However, in a seemingly conflicting provision of the lease, Article 13.1 afforded Enterprise the option of removing non-permanent improvements or leaving them. If left for more than thirty days after termination of the lease, the improvements would become the property of Mendy.
 

 On July 28, 2003, Enterprise mailed a certified letter to Mendy at the address stated in the lease, giving notice of early termination of the lease, effective October 31, 2003. When Enterprise vacated the premises, it exercised its option to leave the satellite dish and carport attached to the building. Thus, according to the lease, thirty days later the property was deemed abandoned and became the property of Mendy.
 

 On August 29, 2005, Hurricane Katrina struck the greater New Orleans area, and the subject building was heavily damaged by wind and flood waters.
 

 On September 1, 2006, Mendy filed suit against Enterprise alleging Enterprise breached the lease by failing to remove or replace fixtures it added to the leased premises when it terminated the lease. The failure to remove or replace fixtures resulted in damage to the building during Hurricane Katrina. Specifically, Mendy alleged that the carport became a projectile, the building sustained more severe wind damage because of the removal of the storm windows, and the satellite |sdish caused the roof to peel back. Based on these allegations, Mendy stated a cause of action for both breach of contract and negligence.
 

 Initially, Enterprise filed an answer generally denying all claims. It later filed a motion for summary judgment arguing that it had properly terminated the lease; it had exercised its option to not remove the carport and satellite dish, and, pursuant to the terms of the lease, had abandoned the property. As such, at the time of Hurricane Katrina, the complained of property was Mendy’s property for which Enterprise had no responsibility.
 

 Mendy opposed the summary judgment for the reasons set forth in its petition. After a hearing on September 25, 2009, wherein the trial court granted summary judgment in favor of Enterprise, a formal judgment was entered on October 12, 2009. This timely appeal followed.
 

 
 *775
 
 LAW AND ANALYSIS:
 

 “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.”
 
 King v. Parish Nat’l Bank,
 
 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La.Code Civ. Proc. Art. 966 A(2)). Motions for summary judgment are reviewed on appeal
 
 de novo.
 
 The same criteria that govern the trial court’s determination of whether summary judgment is appropriate are used by the reviewing court.
 
 Samaha v. Ran,
 
 07-1726, pp. 3^ (La.2/26/08), 977 So.2d 880, 882-883. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. Art. 966 B. The burden of proof remains with the movant. However, if 14the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La.Code Civ. Proc. Art. 966 C(2).
 

 The determination of whether a fact is material turns on the applicable theory of recovery.
 
 Thomas v. North 40 Land Dev., Inc.,
 
 04-0610, p. 22 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174. A fact is material if its existence or non-existence is essential to plaintiffs cause of action under the applicable theory of recovery.
 
 Harvey v. Francis,
 
 00-1268, p. 5 (La.App. 4 Cir. 3/21/01), 785 So.2d 893, 897. Thus, not all disputed facts are material for the purposes of summary judgment.
 

 In support of its motion for summary judgment, Enterprise attached an affidavit of Rudolph Diaz, III, Enterprise’s operations manager at the time the motion was filed; a copy of the lease; a copy of the certified termination letter dated July 28, 2003, sent by the operations manager employed on that date; a copy of a letter dated August 5, 2003, from Harry E. Kuh-ner, II, an attorney for Regions |5Bank
 
 [1]
 
 who had been copied on the termination letter; and, a copy of a letter dated November 5, 2003, transmitting the keys to the property to Mendy.
 

 The affidavit set forth Diaz’s appreciation of the lease and its provisions. He attested that he was qualified to make the affidavit because of his duties concerning real estate, construction and facility management.
 

 The portions of the lease relevant to this appeal are Article 7.4, Article 9.1 and Article 13.1. Article 7.4, entitled “Landlord’s Work and Tenant’s Alterations,” provides in pertinent part:
 

 Tenant shall have the right, at its sole expense, from time to time, to redecorate the Demised Premises and to make such alterations changes and/or installations in such parts thereof as Tenant shall deem expedient or necessary for its purposes; provided; however, that such
 
 *776
 
 alterations, changes and/or installations when completed shall neither impair the structural soundness nor diminish the value of the building of which the Demised Premises forms a part.
 

 [[Image here]]
 

 Anything contained in this Section 7.4.[sie] to the contrary notwithstanding, Tenant shall not make structural changes or changes to the exterior of the Demised Premises without Landlord’s prior approval, which approval shall not be unreasonably withheld, conditioned or delayed; however, Tenant shall have the right to refurbish the exterior of and or relocate the entrance of the Demised Premises, without Landlord’s approval, so long as such work is consistent with Tenant’s then current trade dress and standard colors.
 

 As part of Tenant’s communication systems, Landlord hereby permits Tenant to install and hook-up a satellite dish antenna and other communication equipment on the roof of the Demised Premises. The antenna/equipment shall be mounted on a non-penetrating skid which distributes the weight or otherwise installed so that it will not damage the roof system. Tenant shall promptly repair any damage caused by such installation, and, at the end of the term, Tenant | (¡shall remove such equipment and repair any damage caused by its removal.
 

 Article 9.1, entitled “Further Covenants,” provides, in pertinent part:
 

 Tenant and Landlord covenant and agree as follows:
 

 (a) Tenants agrees upon the expiration or termination of this Lease, to remove its goods and effects and those of all persons claiming under it and to yield up peaceably to Landlord the Demised Premises in as-is condition, subject, however, to the provisions of Section 7.2
 
 [2]
 
 and 13.1.
 

 Article 13.1, entitled “Fixtures,” states: All equipment and other personal property installed by or at the expense of Tenant and are susceptible of being removed from the Demised Premises, shall remain the property of Tenant and Tenant may, but shall not be obligated to, remove the same or any part thereof within thirty (30) days after the end of the term hereof, and provided that Tenant, at its sole cost and expense, shall make any repairs occasioned by such removal. Any such property which is not so removed shall be deemed abandoned and shall become the property of the Landlord.
 

 The certified letter from the operations supervisor for Enterprise to Edward Men-dy informing Mendy that Enterprise wished to exercise its right to terminate the lease is addressed to the address provided in the lease for communication from tenant to landlord. The letter stated that the termination date would be October 31, 2003. It also explained that a check for $6000, representing the early termination penalty, was enclosed in a copy of the letter to the Civil Sheriff.
 

 |7The letter from the Region’s Bank attorney to Enterprise suggested that in addition to the $6000 penalty fee, the remaining three month’s rent due under the lease should be sent to the Civil Sheriff also.
 

 In response to Enterprise’s motion for summary judgment, Mendy filed a confusing and convoluted opposition, and attached the affidavit of Edward Mendy. Many of the arguments raised in the opposition were new and not related to the
 
 *777
 
 allegations contained in the petition, as were the attestations in Mr. Mendy’s affidavit.
 

 Enterprise replied to the opposition and submitted additional support to refute the allegations, new and old, made by Mendy. For example, Mr. Mendy claimed that the termination letter was never received. Enterprise submitted the return receipt.
 

 At the hearing, the trial court repeatedly asked counsel for Mendy about the notice of termination, the cancelled checks for the rent and early termination penalty, and why Mendy waited over eighteen months from the date Enterprise moved out to claim the lease was breached. The court stated that it found it “curious” that this lawsuit was not filed until Hurricane Katrina damaged Mendy’s building. Despite the record evidence, Mendy’s counsel insisted that the lease had not been properly terminated, and as such, the fixtures were still the property of Enterprise, which should be held liable.
 

 Pursuant to La.Code Civ. Proc. art. 966 C(2), Enterprise only needs to prove that there is an absence of factual support for one or more elements essential to Men-dy’s claim. Mendy claims that Enterprise breached the lease by not giving proper notification of early termination. Enterprise has proven that it gave proper notification. Mendy claims that Enterprise did not make the proper payments | ^required for early termination of the lease. Enterprise has proven that it made all necessary payments, and that Mendy negotiated all of the checks. Mendy’s argument that the checks were not sent directly to them, but rather to the civil sheriff, does not negate the fact that proper payments were made, and that Mendy received them. Additionally, our reading of the lease, particularly Article 13.1, satisfies this Court that Enterprise did not breach the lease by abandoning the improvements made to the subject property.
 

 Accordingly, we find that Enterprise successfully negated Mendy’s claims for breach of contract, and that summary judgment was appropriate.
 

 Mendy also alleged in its petition that Enterprise’s negligence in leaving behind the carport and satellite dish caused additional damages to Mendy’s building in the wake of Hurricane Katrina. Because we find that Enterprise did not breach the lease between it and Mendy, and that under the terms of the lease, the complained of items were in fact Mendy’s property, Enterprise cannot have any liability for the damage.
 

 Mendy Properties, LC, argues that should this Court find summary judgment was appropriate against it individually, Mendy & McElroy still has a viable claim in negligence against Enterprise. Because we have found that Enterprise did not breach the lease, it can have no liability for any damage caused by Hurricane Katrina to any tenant of the leased premises. The property that allegedly caused the additional damage was the property of Mendy Properties, LC.
 

 Lastly, Mendy’s claims for gross negligence, intentional fault or strict liability are being raised for the first time on appeal. This Court only reviews issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires ^otherwise.
 
 See Uniform Rules
 
 — Courts
 
 of Appeal, Rule 1-3.
 
 We see no reason to review these late-raised allegations.
 

 Accordingly, for the reasons stated above, we affirm the ruling of the trial court.
 

 AFFIRMED
 

 [1]
 

 . Regions Bank held the mortgage on the property, which was in foreclosure at the time Enterprise terminated the lease. We have also discerned from the record that Mendy was in bankruptcy and that a trustee had been appointed.
 

 [2]
 

 . Article 7.2 addresses the obligations of the Tenant to maintain the premises in good order and condition during the term of the lease.