DANIEL L. DYSART, Judge.
| )TEC Realtors, Inc., appeals a summary judgment in which it was found to be in breach of a lease it entered into with 720 Harrison, LLC. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
720 Harrison, LLC (hereinafter “720 Harrison”), is a limited liability company *1271 that develops and leases buildings. Its members are Cynthia Pacaccio and her husband, William Edgett. Prior to Hurricane Katrina, 720 Harrison developed plans to build an office building at 720 Harrison Avenue in the Lakeview neighborhood of New Orleans. Following Hurricane Katrina but prior to the start of construction, Ms. Pacaccio was contacted by Mark Inman of TEC Realtors, Inc. (hereinafter “TEC”), about leasing the building. TEC planned to occupy part of the building and sublet the remainder.
720 Harrison also owned an already completed building adjacent to the one to be built, and according to Ms. Pacaccio’s deposition testimony, Mark Inman and his parents[1] toured the constructed building. The only distinction between the two | gbuildings was that 720 Harrison Avenue would have an elevator. TEC was provided with the plans of the adjacent building.
After numerous verbal communications, a “letter of intent” was signed by both parties, setting forth the terms and conditions relative to construction of the building at 720 Harrison Avenue.
On September 10, 2007, a Net Lease Agreement provided by TEC was executed by the parties. On November 19, 2008, TEC sent to 720 Harrison a letter terminating the lease agreement. On February 12, 2009, 720 Harrison filed suit against TEC for breach of the lease.
720 Harrison filed a Motion for Summary Judgment on Breach, to which TEC filed an opposition, and 720 Harrison replied. A hearing was had on March 4, 2011, at which time the trial court ruled from the bench. It granted 720 Harrison’s motion and gave oral reasons from the bench. The trial court deemed the judgment final for purposes of appeal. This appeal followed.
STANDARD OF REVIEW:
“Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La.Code Civ. Proc. Art. 966 A(2)). Motions for summary judgment are reviewed on appeal de novo. The same criteria that govern the trial court’s determination of whether summary judgment is appropriate are used by the reviewing court. Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-883. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions |son file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. Art. 966 B.
DISCUSSION:
In its first assignment of error, TEC argues that the trial court erred in finding that none of the terms allegedly agreed upon and listed in its November 19, 2008, letter to 720 Harrison, was a valid basis for termination of the September 10, 2007, lease agreement.
TEC argues first that one of the terms of the lease, to-wit, use of the sign pylon which was in front of the building during the negotiations, was breached by 720 Harrison, thereby allowing TEC to terminate the lease.
In the November 19, 2008, letter terminating the lease, Christopher Inman stated *1272 that TEC had concerns about the removal of a pylon upon which TEC was to place its own business sign. Inman stated that the anticipated use of the pylon was a major factor in TEC’s decision to lease the building.
The property on which the building was to be erected was formerly a gas station. At the corner of the property there existed a pylon that previously held a sign for that business. After Hurricane Katrina, new building codes were adopted in the City of New Orleans. According to the deposition testimony of Ms. Pacaccio, attached as an exhibit to TEC’s memorandum in opposition, new building codes required that the yet unconstructed building be repositioned on the lot, necessitating the removal of the pylon. Ms. Pacaccio testified that she told Mark Inman about the situation with the sign, and he replied that it would not be a problem.
The lease agreement contains a clause entitled “Lessee’s Signs.” It reads:
1 ¿Lessee shall be responsible for any new signage in front of the leased building. Lessee shall be responsible for the removal of any existing signs. Further, this lease agreement between Lessee and Lessor is contingent upon Lessee obtaining approval for signage per their specifications from the Lessor and the City of New Orleans. Lessee shall have the right to use pylon sign in front of the building that formerly contained the previous tenant’s sign upon lease execution and shall have the right to place its sign on the front of the building upon commencement date. Lessee shall be responsible for all installation and maintenance costs associated with its sign(s).
TEC argues that it must be allowed to utilize parol evidence to show that the contingency referenced in the lease clause was not satisfied and thus formed a basis for terminating the lease. The trial court found that the lease agreement was unambiguous and thus refused to allow the introduction of parol evidence. We agree.
Louisiana Civil Code article 1848 provides: “Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature.” Parol evidence may be admitted to prove a vice of consent, or if it is alleged that a subsequent and valid oral agreement modified the written act. La. Civ.Code art. 1848.
In the instant case, TEC argues that a letter of intent written months before the signing of the lease should be allowed into evidence to prove that it would not have entered into the lease if it knew the pylon was to be removed. The trial court cited Louisiana Civil Code arts. 2046 and 2047 in support of its ruling. Specifically, the court found that giving the words of the lease their generally prevailing meaning, the lease was clear and explicit and its enforcement led to no absurd consequences.
|,¿We agree with the trial court’s reasoning and result. The lease, provided by TEC, does not allow for the termination of the lease because of the removal of the pylon. The only contingency provided for in the signage clause was for the Lessee to obtain approval for their signage from the Lessor and the City. If the pylon was still in existence, the lease provides that TEC could use it; however, the lease does not provide that the lease can be terminated because the pylon no longer exists.
Further, the Code provides that parol evidence can be introduced to prove that modifications were made subsequent to the signing of the lease. La. Civ.Code art. 1848. In this case, TEC sought to introduce evidence of negotiations and agreements made prior to the signing of the lease.
*1273 In its second assignment of error, TEC again argues that the trial court erred in not allowing parol evidence to prove the true intent of the parties. It claims that the building was not constructed timely. TEC contends that it needs to use parol evidence to prove that to apply the lease as written would lead to an absurd result.
TEC provided the lease, which was a standard form used in the course of its own business, with some modifications, all of which were drafted by TEC. According to the testimony of Ms. Pacaccio and Mark Inman, 720 Harrison originally drafted a lease. Mark Inman testified that the lease prepared by Ms. Pacaccio had “so many contentions and so many points that we just couldn’t live with.... And we just finally looked at it and said, we’re never going to be able to work a[sic] on this form; let’s try and go to the standard form.”
Louisiana Civil Code art. 2056, entitled “Standard form contracts,” provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished the text.
IrA contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.
However, the trial court found, and we agree, that no further interpretation is needed because interpreting the lease as written does not lead to absurd results. TEC argues that the lease was not to commence until two weeks after Lessee’s receipt of copies of the certificate of occupancy issued by the City and the keys to the premises. Thus, TEC contends that the lease never commenced. We disagree. The lease became binding on the date it was signed regardless of the date of occupancy. Under the clause entitled “Term,” the following language can be found: “Regardless of Lease Commencement, this lease is effective between Lessor and Lessee upon full execution of the lease documents, otherwise known as the “Effective Date.”
TEC also complains that enforcement of Paragraph 7 of the lease entitled “Building Occupancy,” would lead to absurd results. Specifically, the paragraph as written provides that TEC has the right to occupy the premises upon receipt of both the certificate of occupancy and the keys. 720 Harrison must substantially complete the leased premises “within 1 year of work commencement, or as soon as possible thereafter, and in any case not later than 10 months” after the certificate of occupancy is issued.
We agree with TEC that the clause is fraught with indefinite terms, e.g., “substantially complete,” “as soon as possible thereafter,” but we must reiterate that TEC prepared the lease and, therefore, the lease must be interpreted in favor of 720 Harrison. Also, TEC’s argument that it had the right to terminate the lease j^because 720 Harrison breached the occupancy clause is premature at best. The building had not yet been completed when TEC sought to terminate the lease.
Finally, TEC argues once again that the trial court erred in not allowing it to introduce parol evidence. The lease drafted by TEC provides:
ENTIRETY OF UNDERSTANDING IN WRITTEN LEASE: It is agreed that the entire understanding between the parties is set out in the lease and any riders which are hereto annexed, and that this lease supersedes and voids all prior proposals, letters and agreements, oral or written. The law of Louisiana where the leased premises are situated shall apply.
*1274 Accordingly, we find no error in the ruling of the trial court and affirm the judgment.
AFFIRMED

. Although sued solely as TEC Realtors, Inc., defendants' corporate name is actually Cold-well Banker/TEC Realtors, Inc. Christopher Inman is president, Margie Inman is the secretary, and their son, Mark, is an employee.