JAMES F. McKAY, III, Chief Judge.
|, This case involves the expropriation of land owned by the Orleans Parish School Board by the State of Louisiana for the purposes of constructing a new hospital in the Mid-City section of New Orleans. There is no dispute as to the State having the right to expropriate the subject prop *712 erty. The dispute involves the methodology used to value the property and just compensation for the taking.
FACTS AND PROCEDURAL HISTORY
On March 28, 2011, the Orleans Parish School Board (OPSB) filed an inverse condemnation suit against the State of Louisiana and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (collectively LSU) alleging a taking of OPSB’s property located at 2009 Palmyra Street and 236 South Johnson Street in New Orleans, otherwise known as McDonogh No. 11 School.[1] In response, LSU filed a reconventional demand against OPSB on June 13, 2011, seeking to expropriate the property pursuant to | ;>,La. R.S. 19:1 et. seq. and La. R.S. 19:141 et seq.[2] At that time, the trial court also signed the order of expropriation. LSU then deposited into the registry of the court the amount of $2,430,000,000 as just compensation to OPSB for the subject property, representing the full extent of OPSB’s losses. The entirety of these funds was withdrawn by OPSB from the registry of the court. Thereafter, OPSB filed an answer asserting numerous claims against LSU, including claims that LSU did not deposit a large enough sum into the registry of the court and that OPSB suffered damages in the form of replacement cost and other damages.
Following discovery, OPSB filed a motion for partial summary judgment on appropriate methodology to determine just compensation on November 28, 2011. OPSB asserted that the proper measure of value for the taking of a public school is the cost of replacement. On December 2, 2011, LSU also filed a motion for summary judgment seeking to have the court determine the appropriate methodology and the fair market value of the subject property. LSU asserted that the comparable sales-market value approach is the only proper method for valuing the expropriated property. In support of its motion for summary judgment, LSU attached the appraisal reports prepared by Michael Truax and Kevin D. Hilbert, two licensed real estate appraisers retained by LSU as expert witnesses. OPSB did not provide the court with an appraisal for the property. In open court on January 10, 2012, the trial court granted LSU’s motion for summary judgment and denied OPSB’s motion for partial summary judgment on the grounds that there was “no |3genuine issue of material fact as to the fair market value of the subject property.” On March 1, 2012, the trial court entered a judgment dismissing all of OPSB’s claims except with respect to OPSB’s claim for compen-sable relocation expenses, if any. It is from this judgment that OPSB now appeals.
DISCUSSION
On appeal, the OPSB raises the following assignments of error: 1) the trial court erred in granting summary judgment that market value based on supposedly comparable sales is the sole proper methodology for valuing McDonogh No. 11; 2) the trial court erred in granting summary judgment that the replacement cost approach to value may not be employed unless the owner establishes that the taken property is both unique and indispensable and there is no market for the property; and 3) the *713 trial court erred in granting summary judgment in the face of genuine issues of material facts as to whether (i) there exists a market and reliable market data for McDonogh No. 11; (ii) McDonogh No. 11 is a unique and indispensable property; and (iii) the value established by one of the defendants’ four experts represents the fair market value of the property.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and | ¿admissions on file, together with the affidavits if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The Louisiana Supreme Court and this Court have recognized that “a genuine issue’ is a triable issue,’ an issue in which reasonable persons could disagree” and that “a material fact’ is a fact, the existence or nonexistence of which may be essential to plaintiffs cause of action under the applicable theory of recovery.” Champagne v. Ward, 03-3211, p. 5 (La.1/19/05), 893 So.2d 773, 777; Mitchell v. Villien, 08-1470, p. 5 (La.App. 4 Cir. 8/26/09), 19 So.3d 557, 562. Favored in Louisiana, the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and should be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).
Property owners in expropriation eases are entitled to receive compensation for the full extent of their loss as provided under the Louisiana Constitution of 1974. Article I § 4 of the Louisiana Constitution of 1974 provides that “the full extent of his loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred because of the expropriation.” While OPSB is technically correct that the full extent of loss is not always satisfied by the market value analysis based upon comparable sales, alternate valuation methods are used in place of fair market value only when there is an absence for sales of similar properties. See State, Dept. of Highways v. Constant, 369 So.2d 699 (La.1979). In fact, the Louisiana Supreme Court has held that a property owner in an expropriation suit is entitled to | sreplacement costs upon a showing that the location of the property or some physical feature of it is unique and indispensably related to the success of the business. Id. “The jurisprudence has limited awards of replacement value to situations in which the property was indispensable to the expropriatee’s business such that an award constituting merely the market value of the property would likely have caused the defendants to lose their business.” State, Dept. of Transp. & Dev. v. Griffith, 585 So.2d 629, 631-632 (La.App. 2 Cir.1991).
Fair market value is to be calculated after the highest and best use is determined by three basic methods: the market/sales approach; the cost approach; and/or the income approach. See Exxon Pipeline Company v. Hill, 00-2535, p. 8 (La.5/15/01), 788 So.2d 1154, 1160. In the instant case, LSU hired two licensed real estate appraisers and both of them appraised the property according to the mar *714 ket/sales comparison approach.[3] “In the sales comparison [market] approach, an opinion of market value is developed by comparing properties similar to the subject property that have recently sold, are listed for sale, or are under contract (i.e., for which purchase offers and deposits have been recently submitted.”) The Appraisal of Real Estate, Appraisal Institute (14th Edition, 2008), p. 297. LSU’s experts compared the prices of eight recently sold comparable properties in order to make their appraisals.[4] These properties included several school buildings in the | (¡greater New Orleans area. Because LSU made a showing that there were sales of similar properties, it was incumbent upon OPSB to prove that its property was so unique that it was entitled to replacement cost instead of fair market value. However, OPSB has failed to provide any evidence to support its allegation that the subject property is somehow both unique in nature and location as well as indispensable to its business of providing education to the students of Orleans Parish. In fact, OPSB has even failed to provide its own appraisal of the subject property. Therefore, with respect to OPSB’s first two assignments of error, the trial court was correct in holding that the proper methodology for valuing McDonogh No. 11 was the comparable sales method because OPSB failed to show that there was no market for the subject property or that the property was both unique and indispensable.[5]
In its third and final assignment of error, OPSB contends that the trial court erred in granting summary judgment in the face of genuine issues of material facts as to whether (i) there exists a market and reliable market data for McDonogh No. 11; (ii) McDonogh No. 11 is a unique and indispensable property; and (iii) the value established by one of the LSU’s four experts represents the fair market value of the property. As stated above, LSU has shown that there exists a market for and reliable market data for McDonogh No. 11 by providing the information regarding the sales of eight comparable properties. Also stated above, OPSB has failed to |7prove that McDonogh No. 11 is a unique and indispensable property. Accordingly, there are no genuine issues of material fact concerning a market and reliable market data for McDonogh No. 11 or whether *715 or not McDonogh No. 11 is a unique and indispensable property.
As noted above, LSU hired two experts to appraise the subject property and render opinions as to the amount of just compensation due to OPSB. LSU then took the higher of the two appraised values ($2,480,000.00) and deposited that sum into the registry of the court as just compensation due to OPSB under Louisiana law. OPSB did nothing to refute the appraisals by LSU’s experts. Furthermore, OPSB withdrew the $2,430,000.00 deposited into the registry of the court. Therefore, based on the evidence presented to the court below, there is no genuine issue of material fact as to the fair market value of the property.
CONCLUSION
For the above and foregoing reasons, we agree with the district court that there are no genuine issues of material fact and LSU is entitled to judgment as a matter of law. Accordingly, the granting of summary judgment in favor of LSU and against OPSB is affirmed.
AFFIRMED

. The building was designed by William Frer-et and was constructed in 1878. The school opened in 1879 and operated up until Hurricane Katrina. In 2008, after approximately $3,000,000.00 in renovations, the building reopened as the Priestley School of Architecture and Construction, a charter high school operating under the jurisdiction of OPSB.

. These statutes provide for the general expropriation authority and grant LSU "quick-take” expropriating authority.

. Pursuant to the Uniform Relocation Act (49 C.F.R. 24, et seg.) and La. R.S. 19:143 each property within the hospital footprint must be appraised by two appraisers and two separate reports must be issued for each property.

. These sales included: (1) sale of church and educational complex by the First Baptist Church of New Orleans to the Academy of the Sacred Heart of New Orleans; (2) sale of church and school by First English Lutheran School to First Pilgrims Baptist Church; (3) sale of church and school by Believer's Life Family Church to Household of Faith Family Worship Church International; (4) sale of church, school and nurses? residence by St. Joseph’s Gate, Inc. to Atkins ÑOLA, LLC; (5) sale of Archbishop Blenk High School by Archdiocese of New Orleans to the Jefferson Parish School Board; (6) sale of institutional and educational use property by the Southern District of the Lutheran Church — Missouri Synod to the Congregation of the Sisters of St. Joseph Inc.; (7) sale of the former Marre-ro Christian Academy by the Church of God of Louisiana, Inc. to the Jefferson Parish School Board; and (8) sale of church with auditorium and meeting rooms by Way of Jesus Christ Missionary Baptist Church to the Church of the King, Inc.

.OPSB's reliance on State v. Ouachita Parish School Board, 162 So.2d 397 (La.App. 2 Cir. 1964) is misplaced. In that case, both the expropriating authority and the school board agreed that there was "no market value for the property as a school and for this reason the usual methods used in determining damages [were] unavailable.”