STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

10-103

SHANE KERRY

VERSUS

CHARLES PEARSON, M.D.

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-004739, DIV. G
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Oswald A. Decuir, Marc T. Amy, and James T. Genovese,
Judges.

**AFFIRMED.**

**Joseph T. Dalrymple**
**Dalrymple & Ledet**
**Post Office Drawer 14440**
**Alexandria, Louisiana 71315-4440**
**(318) 442-1818**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Shane Kerry**

**Nicholas Gachassin, Jr.**
**Daniel C. Palmintier**
**Gachassin Law Firm**
**200 Corporate Blvd., Suite 103**
**Post Office Box 80369**
**Lafayette, Louisiana 70598**
**(337) 235-4576**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Charles Pearson, M.D.**

**GENOVESE, Judge.**

In this medical malpractice case, Plaintiff appeals the trial court's judgment granting a motion for summary judgment on behalf of Defendant. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 17, 2005, Shane Kerry reported to the emergency department of the West Calcasieu Cameron Hospital (WCCH) in Sulphur, Louisiana, with a fracture of his right heel bone. Mr. Kerry was seen by Defendant, Dr. Charles Pearson. According to his Petition for Damages, Mr. Kerry alleges that "Dr. Pearson failed to immediately decompress [his] foot, failed to perform surgery, failed to call in an orthopaedic surgeon, or, see to the consult of an orthopaedic surgeon to arrange [his] immediate transport . . . to a hospital willing to treat him." Mr. Kerry was discharged later that same day, even though he alleges there were "obvious indications" that he "was in danger of a loss of a limb or permanent increased morbidity/disability[.]"

Mr. Kerry's petition further claims that Dr. Pearson "dumped" him "with [the] advice to follow-up during the following week at LSU Medical Center in Shreveport." After his discharge, and while being transported later that day by relatives to his home in Alexandria, Louisiana, Mr. Kerry was brought to the emergency department of CHRISTUS St. Frances Cabrini Hospital (Cabrini) in Alexandria because of his "unceasing cries of agonizing pain[.]" Mr. Kerry claims that he was "immediately seen by a specialist in podiatric surgery, who took [him] and immediately proceeded to emergency surgery because of, among other problems, extreme vascular compromise." Mr. Kerry alleges that "[a]s a result of the delay, negligence, and deviations from the standard of care on the part of [Dr. Pearson, he] has sustained extreme disability, loss of sensation, and tissue necrosis with loss of

muscle, tendon, skin, and subcutaneous tissue, and remains on crutches with a walking boot . . . ."

This medical malpractice lawsuit was instituted on September 10, 2008, after the matter was submitted to a medical review panel. On June 5, 2009, the medical review panel rendered a unanimous opinion[1] wherein it decided that "the evidence [did] not support the conclusion that [Dr. Pearson] failed to comply with the appropriate standard of care as charged in the complaint." Dr. Pearson filed a motion for summary judgment on June 7, 2009, wherein he alleged that Mr. Kerry "cannot present any competent evidence to establish the applicable standard of care or to prove that [Dr. Pearson] did not comply with the applicable standards. Thus, [Mr. Kerry] cannot meet the burden of proof required under the Medical Malpractice Act and La.R.S. 9:2794."

In support of his motion for summary judgment, Dr. Pearson attached as exhibits the written opinion of the medical review panel, the affidavits of Dr. Walter Preau and Dr. Stephen Hedlesky,[2] the medical records from Mr. Kerry's visit to the

---

[1]The entirety of the medical review panel's written opinion stated:

> The records provided do not indicate that immediate decompression of the foot by the emergency room physician at [WCCH] was necessary, and it was not apparent that emergency surgery was indicated at that time. Dr. Pearson did consult with two orthopedic surgeons, and there is no indication in the records that he failed to follow their instructions. Also, the records do not indicate that immediate transfer of the patient to another hospital was necessary, and there was no information in the records that this was recommended by the orthopedic consults. Additionally, the patient was seen in a timely manner, appropriate studies were performed, and proper discharge instructions were given including appropriate[ly] arranged follow-up. It is unfortunate that the patient experienced a poor outcome and developed a compartment syndrome, however the appropriate instructions were given for the symptom of compartment syndrome, and the patient followed those instructions by going to another hospital when he had increased pain, where he received appropriate care for the compartment syndrome. We also note that approximately fifty percent of calcaneus fractures have a poor outcome, with permanent disability, even with appropriate care.

[2]Dr. Preau and Dr. Hedlesky both served on the medical review panel in this matter and are both licensed to practice emergency medicine in Louisiana.

emergency department of WCCH, and the discharge summary prepared by Paul L. Sunderhaus, Doctor of Podiatric Medicine, who treated Mr. Kerry at Cabrini. Dr. Pearson argued that Mr. Kerry lacked the requisite expert testimony to support his allegation that he (Dr. Pearson) committed medical malpractice.

In his opposition to Dr. Pearson's motion, Mr. Kerry attached as exhibits his deposition, the deposition of Dr. Sunderhaus, the affidavit of his mother, Veronica Kerry, the affidavit of his brother, Michael Kerry, his medical records from Cabrini, excerpts of his medical records from WCCH, the deposition of Dr. Pearson, and the deposition of Dr. James Perry.[3] Mr. Kerry asserted that the medical review panel "had to rely on the records . . . which did not mention blanching"; however, he argued that "[t]he very large [five centimeter] posteriorly displaced fragment of calcaneous which was causing the visible deformity in [his] heel by its protrusion into the skin was already causing vascular compromise when [he] was wheeled into the emergency department [of WCCH] and remained though[out] his initial examination . . . [at Cabrini]." Mr. Kerry argued that the medical records from his emergency room visit to WCCH, which were prepared by Dr. Pearson, do not accurately portray his condition. Mr. Kerry offered the affidavits of Veronica Kerry and Michael Kerry, wherein both corroborate Mr. Kerry's allegation that there were objective indications that Mr. Kerry was in dire need of surgery before Dr. Pearson discharged him from WCCH. However, it is alleged that Dr. Pearson ignored the severity of Mr. Kerry's injury because he had no insurance and could not afford to pay for the surgery.

Mr. Kerry also presented the deposition testimony of Dr. Sunderhaus, the podiatrist who treated him at Cabrini. According to Dr. Sunderhaus, Mr. Kerry

---

[3]Dr. Perry is the orthopedist with whom Dr. Pearson allegedly consulted during his treatment of Mr. Kerry in the emergency department of WCCH on November 17, 2005.

presented with blanching of the skin on the back of his left heel; therefore, surgery was needed "so the skin [could] revascularize." Dr. Sunderhaus explained that the neurovascular compromise was caused by the pressure from the displaced fracture in Mr. Kerry's foot. Within one hour of Mr. Kerry's arrival at Cabrini, Mr. Kerry was being prepared for surgery. Dr. Sunderhaus testified that upon Mr. Kerry's arrival at Cabrini's emergency room, his condition was undoubtably emergent.

The matter was heard on October 27, 2009, at which time Dr. Pearson's summary judgment was granted. In granting Dr. Pearson's motion for summary judgment, the trial court stated that it "did not find that the submissions at this point are adequate to establish a genuine issue of material fact as to the burden that is required under the unique specialization of medical malpractice . . . ." A judgment was signed by the trial court on November 10, 2009, wherein Dr. Pearson's motion for summary judgment was granted, and Mr. Kerry's claim was dismissed without prejudice. Mr. Kerry appeals.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Mr. Kerry asserts that "[t]he trial court manifestly and legally erred in ruling that [his] lack of an expert in emergency medicine was fatal to [his] claim and that [his] submissions were[,] therefore[,] inadequate to establish a genuine issue of material fact."

## LAW AND DISCUSSION

Our Louisiana Supreme Court has instructed us on the standard of review relative to a motion for summary judgment as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La. 11/29/06)], 950 So.2d 544, [*see* La.Code Civ.P.] art. 966. A

4

summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La. 3/9/07)], 951 So.2d 1058[]; *King v. Parish National Bank*, [04-337 (La. 10/19/04)], 885 So.2d 540, 545; *Jones v. Estate of Santiago*, [03-1424 (La. 4/14/04)], 870 So.2d 1002[.]

*Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted). Louisiana Code of Civil Procedure Article 966(C)(2) provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Ordinarily, Dr. Pearson, as the movant in the motion for summary judgment, bears the burden of proof. *Id.* However, in the present case, Dr. Pearson does not bear the burden of proof at trial on the issue of whether medical malpractice was committed; instead, Mr. Kerry bears the burden of proof at trial. La.R.S. 9:2794(A).[4]

---

[4]Louisiana Revised Statutes 9:2794(A) provides:

> In a malpractice action based on the negligence of a physician . . . the plaintiff shall have the burden of proving:
>
> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

Dr. Pearson met his initial burden of proof on his motion for summary judgment. The medical review panel opinion states that there is an absence of factual support for Mr. Kerry's contention that there was a breach of the standard of care, which is an essential element of Mr. Kerry's claim. Therefore, the burden shifts to Mr. Kerry "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial . . . ." La.Code Civ.P. art. 966(C)(2). Thus, the issue presently before this court is whether the trial court was correct in ruling that Mr. Kerry failed to demonstrate that he has sufficient evidence to prove his malpractice claim against Dr. Pearson at trial.

On appeal, Mr. Kerry argues that "[a]n issue of material fact arises when Dr. Pearson denies ever seeing blanching of the back of [Mr. Kerry's] heel." Further, Mr. Kerry contends that "[s]ince Dr. Pearson denied seeing blanching, this piece of very important information was not transmitted to the orthopaedic consult . . . ."

Dr. Pearson counters that "this is not a case involving injuries that can legitimately be said to have originated from [his] treatment – such as leaving a scalpel in the patient or cutting off the wrong limb." Further, Dr. Pearson reiterates his argument that "[t]here is simply no competent evidence whatsoever of any negligence or malpractice" nor is there any evidence "that Mr. Kerry sustained injuries as a result thereof that he would not have sustained otherwise[]" because Mr. Kerry failed to offer any expert testimony in opposition to the motion for summary judgment.

"Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is

---

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

so obvious that a lay person can infer negligence without the guidance of expert testimony." *Samaha*, 977 So.2d at 884 (citing *Pfiffner v. Correa*, 94-924, 94-963, 94-992 (La. 10/17/94), 643 So.2d 1228). Pursuant to our de novo review of the record, we conclude that the trial court was correct in holding that Mr. Kerry failed to produce sufficient evidence to establish that he will be able to prove his claim at trial; thus, no genuine issue of material fact exists, and Dr. Pearson's motion for summary judgment was properly granted.

## DECREE

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Plaintiff/Appellant, Shane Kerry.

**AFFIRMED.**

7