# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1531

**ULTRA PURE WATER TECHNOLOGIES, INC.**

**VERSUS**

**STANDEX INTERNATIONAL CORP. D/B/A MASTER-BILT, ET AL.**

**\*\*\*\*\*\*\*\*\*\***
## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF LAFAYETTE, DOCKET NO. C-2008-4587
## HONORABLE KRISTIAN EARLES, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy and Phyllis M. Keaty, Judges.

**REVERSED AND REMANDED.**

**Amy, J., concurs in the result and assigns reasons.**

Bob F. Wright
Thomas R. Edwards
Domengeaux, Wright, Roy & Edwards
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, LA 70502-3668
(337) 233-3033
**ATTORNEY FOR PLAINTIFF/APPELLANT**
       Ultra Pure Water Technologies, Inc.

Walter C. Thompson, Jr.
Thomas E. Schwab
Mark P. Seyler
Barkley & Thompson, L.C.
1515 Poydras Street, Suite 2350
New Orleans, LA 70112
(504) 595-3350
**ATTORNEY FOR PLAINTIFF/APPELLANT**
       Ultra Pure Water Technologies, Inc.

Richard B. Eason, II
Joseph W. Looney
Raymond P. Ward
Adams & Reese LLP
4500 One Shell Square
701 Poydras Street
New Orleans, LA  70139
(504) 581-3234
**ATTORNEY FOR DEFENDANT/APPELLEE**
    Standex International Corporation d/b/a Master-Bilt

**COOKS, Judge.**

In this appeal, Plaintiff contends the trial court erred in granting Defendant's motion for summary judgment dismissing its entire case-in-chief. Finding summary judgment was not appropriate at this stage in the proceedings, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Plaintiff in this matter is Ultra Pure Water Technologies, Inc. (hereafter Ultra Pure), a company based in Lafayette. Ultra Pure developed, marketed and sold a product called the "ICEX Ice Island," a system that makes, bags, stores, and vends ice on site for sale at retail locations. The "ICEX Ice Island" consists of three components: (1) an ice-making machine on top, which drops the newly-made ice into, (2) a bagging machine, which bags the ice and drops the bagged ice into a (3) "merchandiser" or freezer, from which the public can then purchase the bagged ice.

Ultra Pure's business model is "to lease the ICEX Ice Island systems to retail grocery stores and convenience store chains, either directly or through a leasing company under a favorable lease financing arrangement." Ultra Pure explained leasing enables it to share in the retailer's revenue stream from the bags of ice sold, without any significant capital outlay by the retailer. The retailer either directly pays Ultra Pure a fee on a cents-per-bag formula, or, when lease financing is involved, the retailer pays the leasing company, which then accounts to the lender and Ultra Pure for its share.

The cuber or ice making component was made by a Japanese company, Hoshizaki, which is not involved in this litigation. Ultra Pure hired a contract manufacturer, Courtesy Manufacturing Company and its susbsidiary, CMC Refrigeration, Inc. (hereafter CMC) to make the baggers and merchandisers. CMC

made the baggers, but subcontracted the design and manufacture of the freezers to Standex International Corporation, through its Master-Bilt Division (hereafter Master-Bilt).

Between 2005 and 2007, Ultra Pure purchased from CMC approximately 140 of the Master-Bilt freezers. They were installed in various ICEX Ice Island retail locations throughout the country. Apparently, some operational problems arose but they were addressed by Master-Bilt sufficiently to accommodate operation of the machines.

In January of 2007, Food Lion, who operates supermarkets in various states, agreed to lease ICEX Ice Island systems for ten of its North Carolina supermarkets. In late 2007, the Arizona division of Safeway, which operates supermarkets in various states, agreed to install ICEX Ice Island systems in over 100 supermarkets in Arizona. To fulfill these new contracts, Ultra Pure ordered more than 200 Master-Bilt freezers from CMC. The purchase of the machines in both the Food Lion and Safeway leases was financed through limited liability companies (allegedly a banking necessity to avoid negative ratings assigned Ultra Pure for a poor financial history.)

For the Safeway contract, ICEX Management, L.L.C., was created to purchase and lease the equipment. The lender who financed the equipment, Zions Credit Corporation, loaned to ICEX Management the exact amount of the invoice for the requested equipment. ICEX Management then gave Zions a security interest in the equipment, then leased the equipment to safeway. Master-Bilt contended Ultra Pure was not a party to the Safeway lease and did not receive any rent payments from Safeway. Rent payments were received by ICEX Management.

2

A similar arrangement was made in regard to the freezers purchased for the Food Lion lease. In that lease, Noreast Capital Corporation loaned the money for the equipment to ICEX Financial Services, L.L.C., which was created to own the machines leased to Food Lion. Ultra Pure acknowledged it sold the equipment leased to Food Lion to ICEX Financial Services.

These freezers are at issue in the present litigation, as Ultra Pure asserts the freezers repeatedly failed in operation and needed constant repair and replacement of parts. Eventually, Safeway terminated the arrangement with Ultra Pure because melting ice was leaking onto the floors and creating hazardous conditions for customers. According to Ultra Pure, it repeatedly requested that Master-Bilt repair the problems, but it was unwilling to do so.

On August 12, 2008, Ultra Pure, in its capacity as buyer of the allegedly defective freezers, filed a suit in redhibition against Master-Bilt, as manufacturer of the freezers. The petition also asserted, in the alternative, a claim in *quanti minoris* and a claim for breach of implied warranty of fitness for the intended or ordinary use. The freezers were tendered by Ultra Pure, who prayed for the return of the purchase price, or alternatively, a reduction in price, and in either event, expenses of the sale and damages, including lost profits, plus reasonable attorney fees. Master-Bilt answered the petition and disputed Ultra Pure's allegations, contending the cause of the problems was defective design of the overall system, for which Ultra Pure was responsible. Master-Bilt also brought a third-party demand against CMC.

On June 3, 2011, Master-Bilt filed a motion for summary judgment, raising several grounds for dismissal of Ultra Pure's claims in their entirety, and several alternative grounds for dismissing Ultra Pure's claims for lost profits. At the August 1, 2011 hearing on the motion, Master-Bilt argued Ultra Pure was not the

proper party to bring this claim because it did not own the equipment alleged to have been defective. Ultra Pure countered that it did own the equipment and was the proper party to sue for redhibition. At the close of the hearing, the trial court asked the parties to address the issue of Ultra Pure's right of action in the next scheduled hearing.

At the next hearing on August 1, 2011, the trial court was informed that several relevant depositions still had not been taken. The trial court noted that there were issues of fact which precluded summary judgment on Master-Bilt's motion for summary judgment on the liability grounds asserted. The trial court also denied "the Motion for Summary Judgment as it pertains to Safeway of Arizona and any damages arising out of that contract." The trial court then ordered another hearing on the remaining issues. There was no ruling on the issue of whether Ultra Pure was the real party in interest.

At the next hearing, on August 22, 2011, Master-Bilt filed into evidence discovery documents and deposition excerpts which Master-Bilt contended showed Ultra Pure had sold the equipment in question before any claim for redhibition arose. Ultra Pure objected to the documents as untimely in violation of the requirement for fifteen days' notice under La.Code Civ.P. art. 966(B). Master-Bilt countered that Ultra Pure should have been familiar with the documents and that its counsel was present at the depositions from which the excerpts were taken. Ultra Pure argued that most of the materials had neither been provided with the summary judgment motion nor timely identified and served as supplemental support for the motion, thus, the fifteen day notice requirement of La.Code Civ.P. art 966(B) should have been enforced. The trial court did not agree and gave Ultra Pure only a short recess to familiarize itself with the documents and deposition excerpts in question.

4

At the hearing, Ultra Pure conceded that the machines leased to Food Lion were purchased by ICEX Financial Services. Thus, the trial court granted summary judgment with respect to the machines leased by ICEX Financial Services with regard to the Food Lion stores. Master-Bilt also contended there were no genuine issues of fact that Ultra Pure had sold the machines leased to Safeway to ICEX Management. The trial court agreed stating the machines "[were not] Ultra Pure's ice machines anymore, unless you can show me somewhere that it was. I mean, all the documents say that it wasn't." Therefore, the trial court granted summary judgment with respect to the machines leased by ICEX Management in the Safeway stores.

Ultra Pure appeals the trial court's judgment, asserting the trial court made multiple errors of fact and of law in granting Master-Bilt's motion for summary judgment.

**ANALYSIS**

On appeal, we are mindful that our Louisiana Supreme Court has instructed us on the standard of review relative to a motion for summary judgment as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La.11/29/06)], 950 So.2d 544, [see La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La.3/9/07) ], 951 So.2d 1058[ ]; *King v. Parish National Bank*, [04-337 (La.10/19/04) ], 885 So.2d 540, 545; *Jones v. Estate of Santiago*, [03-1424 (La.4/14/04) ], 870 So.2d 1002[.]

*Samaha v. Rau*, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83 (footnote omitted). Louisiana Code of Civil Procedure Article 966(C)(2) provides:

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

*Kerry v. Pearson*, 10-103, pp. 4-5 (La.App. 3 Cir. 6/2/10), 40 So.3d 463, 466.

The trial court's grant of summary judgment is based on its acceptance of Master-Bilt's argument that by selling or retitling the freezers to the lease financing companies (ICEX Management and ICEX Financial Services), Ultra Pure lost its rights to sue Master-Bilt. Master-Bilt contends when Ultra Pure sold the freezers to ICEX Management and ICEX Financial Services, those entities became subrogated to any warranty rights Ultra Pure once had against Master-Bilt pursuant to La.Civ.Code art. 2548. This subrogation of rights, according to Master-Bilt, means that Ultra Pure, the subrogor, no longer has those warranty rights. Essentially, Master-Bilt argues Ultra Pure can no longer return the thing sold and transferred to the purchaser any right to enforce any seller's warranty against any upstream sellers.

Ultra Pure argues the jurisprudence of this state has consistently held in the absence of a "conventional" assignment of all claims and remedies, a sale with subrogation to rights in warranty does not deprive a seller of his right to bring a warranty action for his own damages against any other person in the chain of title, including any other seller and the manufacturer. We pretermit definitively ruling on this issue today.

6

Even accepting as true Master-Bilt's legal argument that the buyer of a defective thing who resells it to another automatically loses his right of action for his own damages against all prior sellers, including the manufacturer, summary judgment was only appropriate if there were no genuine issues of fact as to whether ownership of all the freezers was actually transferred to the lease financing companies. We find there was conflicting evidence on this issue, which was inappropriately weighed by the trial court at the summary judgment stage.

Initially, we note the record established that Ultra Pure, in its attempt to facilitate lease financing, would use an affiliated leasing company or an unrelated leasing company created by the lender, to act as the nominal lessor. The lender would then advance the funds used to purchase the equipment. Ultra Pure would then share in the revenue stream from the bags of ice sold by way of a cents per bag royalty.

The trial court accepted Master-Bilt's contention that Ultra Pure had resold all of the defective and unfit freezers to leasing companies. Ultra Pure consistently maintained there was no record evidence on summary judgment that Ultra Pure had ever executed an act translative of title to any leasing company or any other third party. Danny Leblanc, Ultra Pure's president, attested in his affidavit that "Ultra Pure never actually transferred title to the equipment" to ICEX Management, the accommodation lessor used to perfect Zions Credits security interest in the leases to Safeway. Master-Bilt does not specifically dispute this testimony by LeBlanc, but argues LeBlanc's testimony was parol evidence and inadmissible in a summary judgment proceeding. Ultra Pure points out that Master-Bilt, who was not a party to the lease financing contract, is not entitled to contend that LeBlanc's affidavit was parol evidence. The law is clear that "the parol evidence rule applies only to actions between the parties to the contract and

7

their privies, not to actions between parties and third persons." *Hobbs v. Central Equip. Rentals, Inc.*, 382 So.2d 238, 243 (La.App. 3 Cir.), *writ denied*, 385 So.2d 785 (La.1980).  Thus, LeBlanc's affidavit testimony is competent summary judgment evidence, and presents genuine issues of fact as to ownership of the freezers.

In regard to the Food Lion lease, it was acknowledged that ICEX Financial services did take title to the equipment, but Ultra Pure retained a reversionary interest to get the machines back at the end of the lease term for one dollar.  Thus, Ultra Pure argues, when it filed suit, it either owned or controlled all of the freezers which it attempted to tender back to Master-Bilt.

 Ultra Pure also argued, under the lease arrangement, it, at all times, retained an interest in the profits in the form of a cents per bag royalty for every bag sold.  Ultra Pure contends, even if it did not formally retain ownership of the equipment, this created an ongoing interest in the recurring revenue stream created by the equipment.

The conflicting evidence on this issue is apparent when the following colloquy between counsel and the trial court is examined:

> MR. EDWARDS  (Counsel for Ultra-Pure):  Well judge, you're not ruling that Ultra Pure is not the real party in interest; you haven't said that?
>
> THE COURT:    No, no; I haven't said that.  I'm just thinking that, you know – I haven't seen any evidence.  That one thing you pointed to doesn't necessarily show a sharing of profits or –
>
> MR. EDWARDS:    It actually does, Judge.  If you look at the schedule in the back, all that ICEX Management got was a Two Cents ($.02) a bag management fee for doing the administration.  The rest of the money flowed to Ultra Pure.  And it still –
>
> THE COURT:    *But you see I've seen some contrary evidence, too*, because like in this other contract they had to be owners of the machines.  And then counsel argued that they didn't own or lease the machines.

(Emphasis added.)

As the courts have uniformly noted , the trial court cannot "determine or even inquire into the merits of issues raised or . . . weigh conflicting evidence on the existence of material facts." *Benniefiel v. Zurich Am. Ins. Co.*, 08-1416, p. 5 (La.App. 3 Cir. 5/6/09), 10 So.3d 381, 385 (quoting *Brittain v. Family Care Servs., Inc.*, 34,787, p. 4 (La.App. 2 Cir. 6/20/01, 801 So.2d 457, 460)). The weighing of conflicting evidence has no place in summary judgment procedure. *LaGrange v. Dynamic Industries, Inc.*, 04-100 (La.App. 3 Cir.6/9/04), 875 So.2d 1059; *Smith v. Lynn*, 32,093 (La.App.2 Cir.08/18/99), 749 So.2d 692. Therefore, finding the trial court weighed the conflicting evidence regarding ownership of the freezers, we reverse the grant of summary judgment and remand back to the trial court for further proceedings consistent with this opinion.

We also note the trial court erred in allowing the introduction of evidence in support of Master-Bilt's motion without abiding by the mandatory service provision of La.Code Civ.P. art. 966 and Louisiana District Court Rule 9.9. Master-Bilt argued below that Ultra Pure should have been familiar with the documents and that its counsel was present at the depositions from which the excerpts were taken. Ultra Pure countered that even if the documents were previously in its possession, the voluminous discovery conducted in this case made knowledge of specific documents unlikely, if not impossible, without time to review the specific documents. Rather than abide by the fifteen-day period provided in La.Code Civ.P. art. 966(B), the trial court gave Ultra Pure only a short recess to review the submissions. We find the short recess provided by the trial court was not only in violation of La.Code Civ.P. art. 966(B), but in no way

9

provided any meaningful opportunity for Ultra-Pure to defend itself against the submissions.

Louisiana Code of Civil Procedure Article 966(B) provides:

The motion for summary judgment, memorandum in support thereof, and supporting affidavits shall be served within the time limits provided in District Court Rule 9.9. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 within the time limits provided in District Court Rule 9.9. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

Louisiana District Court Rule 9.9 states, in pertinent part:

(a) When a party files an exception or motion, that party shall concurrently furnish the trial judge and serve on all other parties a supporting memorandum that cites both the relevant facts and applicable law. The memorandum shall be served on all other parties so that it is received by the other parties at least fifteen calendar days before the hearing, unless the court sets a shorter time.

(Emphasis added.)

The Louisiana Supreme Court in *Buggage v. Volks Constructors*, 06-0175 (La. 5/5/06), 928 So.2d 536, noted that the time limitation established by La.Code Civ.P. art. 966(B) was mandatory. Nevertheless, the *Buggage* court did also indicate a trial court has some discretion in this matter. Rather than holding that untimely affidavits must be excluded by the trial court, the supreme court specifically stated that such affidavits "can" be excluded by the trial court, and noted that the trial court "acted within its discretion" in excluding the opposition. *Buggage*, 928 So.2d at 536. Other courts of this state have also indicated that district courts have discretion, absent prejudice, in application of this otherwise mandatory time period. See *Phillips v. Lafayette Parish Sch. Bd.*, 10-373 (La.App.

10

3 Cir. 12/8/10), 54 So.3d 739; *James Constr. Group, L.L.C. v. State ex rel. Dep't. of Transp. and Dev.*, 07-225 (La.App. 1 Cir. 11/2/07), 977 So.2d 989; *Savoie v. Savoie*, 03-893 (La.App. 5 Cir. 12/30/03), 864 So.2d 742.

This case is complex, and consisted of coast-to-coast discovery, which is evidenced by the lengthy record before us on appeal. We find Ultra Pure was prejudiced by the trial court's refusal to follow the procedural rule that allows them advance notice of the filings and arguments against them. The late introduction by Master-Bilt of the evidence in question prevented Ultra Pure from meeting this evidence with their own arguments and submissions in opposition. Thus, we find the trial court abused its discretion in ruling on the motion for summary judgment at the point this evidence was offered for introduction. This error also warrants a reversal of the trial court's grant of summary judgment.

## DECREE

For the foregoing reasons, the trial court's judgment granting Master-Bilt's motion for summary judgment is reversed. The matter is remanded back to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to defendant-appellee, Master-Bilt.

**REVERSED AND REMANDED.**

NUMBER 11-1531

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ULTRA PURE WATER TECHNOLOGIES, INC.

VERSUS

STANDEX INTERNATIONAL CORP. D/B/A MASTER-BILT, ET AL.

AMY, J., concurring in the result.

I agree with the majority that a reversal is required here. However, I write separately insofar as I limit my analysis to the untimely introduction of evidence in support of the motion for summary judgment. In my opinion, this preliminary and foundational matter should be the sole focus of the court's attention.

As the majority references, Master-Bilt sought to introduce evidence in support of its motion for summary judgment at a second hearing conducted on that motion. Ultra Pure objected to the supplemental submission and noted that it was not given prior notice of the filing. Master-Bilt contended that Ultra Pure was not disadvantaged by the lack of prior notice as the summary judgment proceedings were a continuation of the earlier hearing and the issue under consideration was a pre-existing one. Master-Bilt also noted that Ultra Pure had participated in the depositions which were excerpted in the exhibits.

Ultimately, the trial court permitted the filing of the new evidence, finding that it did not reveal "anything new." Although it allowed a brief recess for Ultra Pure to review the documents submitted on the day of the hearing, it denied counsel's request for additional time to file its own evidence in rebuttal.

Louisiana Code of Civil Procedure Article 966(B) provides that the memorandum in support of a motion for summary judgment and supporting affidavits "*shall* be served within the time limits provided in District Court Rule

9.9." (Emphasis added.) Reference to Rule 9.9 demonstrates that the memorandum "*shall* be served on all other parties so that it is received by the other parties *at least fifteen calendar days* before the hearing, unless the court sets a shorter time." (Emphasis added.) Additionally, Rule 9.10 contains a series of elements which *shall* be contained in that memorandum, including references to legal documents relating to each material fact at issue and designation of the pertinent part containing proof of that fact. In sum, the distinct time limitations regarding such a filing, as well as those related to subsequent filings in opposition and in reply to that opposition, provide *notice* to all concerned about the matter on which the hearing is to be conducted.

Not only does Article 966(B) employ "shall" in setting forth the period for advance notice, but, as recognized by the majority, the supreme court has recognized that the time limitation is "mandatory." *Buggage v. Volks Constructors*, 06-0175 (La. 5/5/06), 928 So.2d 536. Like the majority, I too recognize that *Buggage* and related jurisprudence indicate that the trial court is afforded some degree of discretion in application of this time period. *See, e.g.*, *Sims v. Hawkins-Sheppard*, 11-0678 (La. 7/1/11), 65 So.3d 154; *Newsome v. Homer Memorial Med. Ctr.*, 10-0564 (La. 4/9/10), 32 So.3d 800.

Here, however, the trial court chose to accept an untimely submission filed in support of a motion for summary judgment and without any prior notice as to the extent and contours of the submission afforded to the party in opposition. Further, over objection and in a multi-faceted case, the trial court then ruled on that related motion for summary judgment without a measured opportunity for the opposing party to rebut the untimely, unnoticed evidence.

Once the trial court made the determination to accept the late evidence, whether appropriately or not, it was not the role of the trial court nor the moving party to suggest that the opposing counsel would be unable to offer anything in

2

rebuttal to change the course of the hearing. Also, given the extent of the evidence generated by this litigation and the seemingly moving nature of the claim(s) and defense(s) asserted, I find that the brief recess permitted for review of the new evidence offered no real relief to the party in opposition given its inability to introduce rebuttal evidence. I believe that all of this must be viewed in the context of the mandatory notice strictures of Article 966(B), which required, at a minimum, prior notice to the opposing party.

Finally, I do not find that the follow-up nature of this hearing relieved the parties of the requirement of advance notice. It is true that the motion for summary judgment was initially heard in early August 2011 and the hearing now at issue was conducted three weeks later as a continuation of that matter. However, I find no provision permitting a moving party to bootstrap new evidence into its originally-filed submission without adequate notice. In short, the non-moving party arrived at the hearing with no notice of the evidence and, upon acceptance of that evidence, was afforded no prospective opportunity to rebut the offering. In my opinion, this type of failure in process must certainly constitute an abuse of discretion.

For these reasons, I join the majority in reversing the summary judgment and in remanding the matter for further proceedings.